# FANNIE CAHILL v. CHICAGO & ALTON RAILWAY COMPANY, Appellant.

## Division Two, July 1, 1907.

1. **NEGLIGENCE: Presumption in Favor of Injured Party.** Where there is no proof to the contrary a presumption arises that deceased was in the exercise of due care at the time he was struck by the railroad engine. But this presumption only obtains in cases where there is no evidence one way or the other as to how the accident occurred.

2. ———: ———: **In Favor of Defendant: Presumption upon Presumption.** Although the law will, in the absence of anything showing the contrary, presume that the deceased was in the exercise of due care at the time of the accident, it will not further be presumed that the injury was occasioned by the negligence or carelessness of the defendant, its agents or employees; for that would be building one presumption upon another, a thing the law does not permit.

3. ———: ———: ———: ———: **Must be Proved.** Negligence upon the part of defendant will not be assumed from the fact that deceased will be presumed to have been in the exercise of due care at the time of his injury, but must be proved by plaintiff to entitle her to recover for his death.

4. ———: **Presence of Deceased: Inferred Knowledge.** The evidence showed that it was the custom of defendant in moving an engine from the coming-out track to the main track to have some switchman precede it or ride on the rear end as it backed out, and to send a sufficient force of men in time of snowstorms to clear the switches, and that on the night of the accident there were four men, including deceased, engaged in that work. *Held,* that, the men being in the service of defendant, the en-

gineer on the coming-out engine must have known of their presence, and these facts authorized an instruction predicating plaintiff's right to recovery upon the fact that defendant's servants knew or by the exercise of ordinary care would have known of the presence of deceased on the coming-out track.

5. ———: **Knowledge of Presence: Knowledge of Peril: Inconsistent Instructions.** Defendants may have known of deceased's presence on the track, and yet not have known of his peril; or they may have known of his presence and peril, yet not have been negligent in not discovering his peril in time, by the exercise of ordinary care, to avoid injuring him. So that an instruction for plaintiff to the effect that if defendants knew or by the exercise of ordinary care could have known of deceased's presence on the track and negligently, that is, without ringing the bell or sounding the whistle, backed the engine over him, and an instruction for defendant which told the jury that "there is no proof of the negligence of defendants in not having discovered deceased at or near the track, and in a position of peril, in time by the exercise of ordinary care to have avoided injuring him," are not inconsistent. They relate to different matters.

6. ———: **Instruction: Assumption of Fact.** The assumption in an instruction of a fact about which there is no controversy, or in relation to which the evidence is clear and undisputed, is not error or prejudicial to the adverse party.

7. ———: ———: ———: **Admitted in Answer.** Where the defendant alleged in its answer that "the injuries to deceased mentioned in the petition were caused by his own negligence at the time and under the circumstances described in the petition," it will not be held that an instruction which assumes as an undisputed fact that deceased was struck by the engine mentioned in the petition, was error.

8. ———: ———: ———: **Evidence All One Way.** Where the evidence all tended to show that deceased was struck by an engine at the place and time charged, and, while no person saw the accident, the circumstances all tend to indicate he was killed in the way and by the engine as charged, an instruction for plaintiff which assumes that he was struck by that engine, is not erroneous.

9. ———: **Sweeper on Track: Duty.** It is as much the duty of an employee of defendant, engaged in sweeping snow from the tracks, to look out for approaching engines and cars as it is the duty of an engineer and fireman to look out for him and to avoid injuring him.

10. ———: **Employee: Struck by Engine: Contributory Negligence: Demurrer.** Deceased had been working for the

defendant railroad company for about two years. On the dark night of his injury he was engaged in sweeping snow off of the switches, so that they might be thrown and the engines coming out of the round-house might pass from one switch track to another onto the main track. He knew the exact time the engine which struck him would be backed out of the roundhouse, to be attached to a regularly scheduled train. As the engine approached, making the ordinary noise of an engine operated by its own steam, and running at a rate of speed not exceeding three miles an hour, he allowed himself to be struck by it, although he could, even when it was within ten feet of him, have stepped aside and avoided the collision. Neither his vision nor his hearing was impaired, and his duty required him to go between the tracks. *Held*, that, even though there was no bell rung or whistle sounded, and even though defendant's engineer and fireman were negligent in not discovering his perilous position in time to have avoided the injury, he was guilty of contributory negligence in failing to look for the approaching engine, and his widow cannot recover for his death.

Appeal from Randolph Circuit Court.—*Hon. A. H. Waller,* Judge.

REVERSED.

*Scarritt, Scarritt & Jones* for appellant.

Defendant's demurrer to plaintiff's evidence and its peremptory instruction should have been given. Aerkfetz v. Humphreys, 145 U. S. 418; Riccio v. Railroad, 189 Mass. 358; Lynch v. Railroad, 159 Mass. 536; Keefe v. Railroad, 92 Iowa 182.

*Robertson & Robertson* for respondent.

(1) Plaintiff's first instruction properly declared the law. The presumption of due care always obtains in favor of the plaintiff in the absence of testimony to the contrary. Meadows v. Ins. Co., 129 Mo. 76; Flynn v. Railroad, 78 Mo. 212; Buesching v. St. Louis Gas Light Co., 73 Mo. 233; Holding v. St. Joseph, 92 Mo. App. 143; Smiley v. Railroad, 160 Mo. 629; Weller v. Railroad, 164 Mo. 180; Swanson v. Sedalia, 89 Mo. 121; Railroad v. Landrigan, 191 U. S. 461; 22 Am. and Eng. Ency. Law (2 Ed.), 1280, note 1. (2) It was

negligence for defendant to back the train without signal or notice. Rinard v. Railroad, 164 Mo. 270; Rine v. Railroad, 100 Mo. 228; Sullivan v. Railroad, 97 Mo. 119; Dixon v. Railroad, 109 Mo. 426; Church v. Railroad, 119 Mo. 203; Fleming v. Railroad, 89 Mo. App. 129; Thompson v. Railroad, 93 Mo. App. 548; Kelly v. Railroad, 95 Mo. 279; Weiss v. Iron Co., 31 C. C. A. 363, 88 Fed. Rep. 23; McMarshall v. Railroad, 80 Iowa 757; Railroad v. Dunleavy, 129 Ill. 132; Whalen v. Railroad, 75 Wis. 654; Erickson v. Railroad, 41 Minn. 500; Sobeski v. Railroad, 41 Minn. 169.

BURGESS, J.—Plaintiff, the widow of James Cahill, deceased, brought this suit in the circuit court of Randolph county, at Moberly, Missouri, against the appellant and one Rufus McCormick, the locomotive engineer of said company, for five thousand dollars damages, for negligently and carelessly backing upon and over deceased one of the engines and tenders of defendant company, of which said McCormick was at the time in charge and control as the servant of the company, and killing him, said Cahill.

The accident occurred on the morning of February 15, 1903, and suit was begun on July 25, 1903.

On the first day of the September term, after the filing of the petition and bond for removal to the Federal court for the Northern Division of the Eastern District of Missouri, at Hannibal, which petition was denied, the defendant company, as it might do, took a transcript of the record and filed it in the Federal court, where said cause remained until the seventh day of January, 1904. The plaintiff then filed her motion to remand, which coming on to be heard before Judge E. B. Adams, sitting as a circuit judge, the said cause was remanded to the State court, and a certified copy of the order remanding the cause was filed with the clerk of the circuit court at Moberly, Missouri, February 15, 1904.

On September 13, 1904, the defendants filed separate answers. The answer of the railway company was a general denial, and a plea of contributory negligence and assumption of risk. The answer of McCormick was, first, a general denial, and then an allegation that the alleged injury, if due to any negligence of any agent or servant of the defendant railway company, which this defendant denied, such negligence was that of a fellow-servant of the said James Cahill, working together with him at the time and place mentioned, in a common purpose, and that as to the liability of this defendant, such negligence, if any, and the injuries resulting therefrom were within the risks and perils of the said James Cahill's employment, and were assumed by him in his said employment.

The action was tried in the circuit court at the September term, 1904, before the court and a jury, resulting in a verdict and judgment in favor of the defendant, McCormick, for costs, and in favor of plaintiff and against the railway company for the sum of five thousand dollars. After unsuccessful motions for new trial and in arrest, the defendant company appealed.

The facts out of which this action grew are substantially as follows:

The deceased, James Cahill, worked for the defendant railway company in its yards at Slater, Missouri, where it maintained a division, and where it owned and used a large number of tracks. On the night of February 14, 1903, there was a heavy fall of snow, and a force of men, including the deceased, was required to remain in the yards during the night to keep the switches cleared of snow. Frank Cahill, brother of the deceased, was section foreman, and he remained with the men until about two o'clock next morning, when he went home, leaving the deceased in the yards with the instructions to keep the switches

cleared of snow. He also instructed him to go ahead of a certain engine called the "Hummer" engine which left the roundhouse in the morning and see that there was no snow or ice on the switches ahead of it. The deceased carried with him a lantern and a broom, the latter for the purpose of clearing the snow off the rails, and it would appear that in order to perform his work it was necessary to go between the tracks and clear the snow away from the points of the rails at the switches, and that, to do this effectively, it was often necessary to stoop or kneel down while working.

The engine in question, No. 251, was backed out of the roundhouse some time before six o'clock on the morning of February 15, 1903, for the purpose of pulling a passenger train called the "Hummer" from Slater to Kansas City, and which left Slater at 6:10 a. m. The track on which the engine backed out was called the "coming-out track," and ran by a water tank, and in order to reach the main track it was necessary for the engine to cross several side tracks and switches and also the public road which crossed the tracks. On this occasion the tender of the engine was filled with coal, and backed out to the water tank by the hostler, and then the engineer, Rufus McCormick, took charge of it. After the engine's tanks were filled with water it was backed away slowly from the water tank towards the main track by the engineer, and it would appear that the deceased was struck by the engine or tender at a switch about one hundred and fifty feet east of the water tank and was dragged along several hundred yards, to the last switch at the main track, where the body fell off and was found. It was yet quite dark, and nobody saw the deceased struck; neither the engineer nor fireman knew anything about it until after the engine had arrived at the depot on the main track. At the first switch east of the water

tank there was found a portion of deceased's clothing, also blood and pieces of flesh, and the track or imprint of the body as it was dragged along was easily traceable through the snow from the point where it was struck to the point where it was found. The handle of the broom carried by the deceased was cut in two, and his lantern was found beside the track at the point where he was struck.

The testimony on the part of the plaintiff differs widely from that for the defendant, especially as to signals.

According to the testimony of George Adams, one of plaintiff's witnesses, who worked in defendant's roundhouse, and who was on the tender of the engine while its tanks were being filled with water, the engine was backed away from the water tank and passed over the first switch without any signal whatever. He noticed a headlight on the engine, but stated that there was no light on the rear end or tender as it backed away. There was a small light hanging from the roof of the cab, but this, he said, could not be seen from the direction the engine was moving on account of the fact that the tender was piled full of coal and obscured it. Witness said that the track curved east of the water tank, and that the engineer from the position he occupied could not see a person on the track ahead of him, as the coal on the tender was piled so high that he could not look over it. He did not hear the bell ring nor the whistle blow before the engine started, nor did he see anybody on the engine save the engineer.

Ben Givens testified that he lived within one hundred yards of the railroad track and by the county road which crossed the track about one hundred and fifty yards east of the water tank; that on the morning deceased was killed he was awakened by two loud cries of somebody in distress; that he got up and looked out in the direction of the railroad yards, which was

the direction the cries came from, but could see nothing except some cars in the yard. It was then about 5:30 o'clock, and the snow was blowing and drifting. He heard a sound as of an engine letting off steam, but did not hear the sound of a bell or whistle.

The deceased's brother, Frank Cahill, testified that "when there is snow on the rails to amount to anything, you cannot hear the engines if they don't open the exhaust or ring the bell, and an engine will run right up on you without your knowing it. I swept switches for five years, and I know that engines will slip up on you while you are doing it when there is snow on the ground, and you cannot hear them." He also testified that in moving an engine at night from the roundhouse to the main track it was always the custom to have a switchman go with it, and that the switchman either went ahead of the engine or rode on the hind end of it as it backed out.

Rufus McCormick, the engineer, testified for the defendant that the whistle was blown three times before the engine was started east from the water tank, and that fireman Driscoll was with him on the engine. He further testified that Pat Freel, a switchman, had gone ahead of the engine to line up the switches, and that when Freel signaled to go ahead, witness responded with three sharp blasts of the whistle. In order to start the engine, he said, it was necessary to let off steam, and that the escaping steam makes a shrill noise which could be heard by a person standing off a distance of from fifty to a hundred yards. The testimony of the engineer was corroborated by fireman Driscoll, who also testified that the bell on the engine was kept ringing constantly as the engine went through the yards. Both witnesses testified that there were two small electric lights in the cab of the engine and a headlight on the front end, but that there was no light

on the back of the tender, which pointed in the direction the engine was moving.

The testimony of Pat Freel, the switchman, was to the effect that he went ahead of the engine to line up the switches, and that when ready he gave the signal to back up, and that he was answered by three blasts of the engine's whistle; that on his way toward the engine in the first instance, he passed a man, with a lantern, walking along the track in the direction he was going, and passed him again on his return from the engine, but he didn't know who the man was.

There was a large number of instructions given on both sides, but the only instructions necessary to be considered in the case are the first and third, given for plaintiff, and the first and fifth, given at the instance of the defendant. Said instructions for the plaintiff are as follows:

"1. The court instructs the jury that under the law, in the absence of proof to the contrary, you will presume that at the time the plaintiff's husband was struck and killed he was in the exercise of ordinary care on his part for his own safety. And if you believe from the evidence in the case that on the morning of the fifteenth of February, 1903, at the town of Slater, Missouri, the said deceased was in the employ of the defendant Chicago & Alton Railway Company, in its railroad yards, and engaged in the business of sweeping snow from the switches and removing snow from the same in said yards so as to allow engines to safely pass over them, or at said time was upon said defendant's 'coming-out track,' moving from one point to another about his said business, and that his presence upon said track, if the jury find he was so upon said track and so employed, was known to defendant, its agents or servants in charge of said engine No. 251, or could have been known to them by the exercise

205 Sup—26

of ordinary care upon their part, and that the said agents or servants of said defendant backed said engine along said 'coming-out track' upon which said deceased was engaged in and about his business; and that the said defendant, its agents and servants negligently, that is, without ringing the bell or sounding the whistle or other signal, backed said engine along said track and onto and against the said deceased, without fault on part of deceased, thereby killing him, and that the said deceased was the husband of the plaintiff, then you will return a verdict for the plaintiff, and in the event of returning a verdict for the plaintiff you will find for her in the sum of five thousand dollars, no more nor no less, and the form of your verdict will be, 'We, the jury, find for the plaintiff in the sum of five thousand dollars.'

"3. The court instructs the jury that if you believe from the evidence in the case that the husband of plaintiff was at the time he was struck and killed upon defendant's 'coming-out track' engaged in and about the business of removing snow and ice from the switches, and if the defendant, its agents and servants in charge of said engine, knew that he was there so engaged, or by the exercise of ordinary care upon their part could have known of the same, then it would have been negligence on the part of the said defendant, its said agents and servants, to back said engine out on said track, without warning or signal made to notify said deceased of the approach of said engine; and if you find that while said deceased was so engaged in his work, if you find he was so engaged, and that he was in the exercise of ordinary care on his part, the said defendant negligently backed said engine onto and against plaintiff's husband, without sounding the whistle or ringing the bell or other warning, and thereby killed him, then the plaintiff is entitled to recover."

The instructions given at the instance of the de-

fendant, which are necessary to be considered in the case, are as follows:

"1. The court instructs the jury that the presumption is that at the time in question the defendant was in the exercise of ordinary care and that such presumption remains until overthrown by credible testimony to the contrary.

"5. The court instructs the jury there is no proof of the negligence of defendants or either of them in not having discovered the said James Cahill at or near the railroad track and in a position of peril in time by the exercise of ordinary care to have avoided injuring him."

Instruction numbered 1 given for plaintiff is challenged upon the ground that it amounts to a positive declaration to the jury that they must presume the deceased was in the exercise of due care at the time he was killed. But this instruction means nothing more than, if the jury find from the evidence there is no proof to the contrary, that a presumption arises that the deceased was in the exercise of due care at the time he was killed. This presumption only obtains in cases where there is no evidence one way or the other as to how the accident happened. In this case there was no evidence as to how deceased came to his death, other than that he was run upon and killed by defendant's engine. There was no eye-witness to the accident and how it occurred could only be shown by circumstantial evidence, if at all. Under such circumstances, the law will presume that deceased was in the exercise of due care at the time he was killed. The position and condition of the deceased would seem to indicate that he was struck by some one of defendant's engines; but this was for the consideration of the jury. Defendant relies upon the case of Mockowik v. Railroad, 196 Mo. 550, as sustaining its contention that the court erred in the submission to the jury of

the proposition that a presumption of due care on the part of the deceased at the time of the accident obtained, but we do not think defendant's contention is sustained by that case. On the contrary, it is an authority that such presumption obtains in this case. The court said: "Nor is this a case where the plaintiff was killed, so that what he knew and what he relied upon as controlling his conduct died with him, and hence could not be shown. In such a case as that, because of a presumption of a love of life and because of a presumption that a rational being would take ordinary care to avoid danger, the law in its blandness indulges other presumptions, and one of them is, that it will be presumed that the decedent trusted, as he had a right to trust, that the defendant was running its engine in obedience to speed ordinances, and that such decedent regulated his movements accordingly. [Hutchinson v. Railroad, 161 Mo. l. c. 254, and cases cited; Riska v. Railroad, 180 Mo. 168; Weller v. Railroad, 164 Mo. 180; Sullivan v. Railroad, 117 Mo. 214.]"

Yarnell v. Railroad, 113 Mo. 570, is also relied upon by defendant company as supporting its contention. We quite agree, as was ruled in that case, that negligence on the part of a carrier cannot be presumed in favor of a person not a passenger from the mere fact of an accident and injury to such person, but must be proven; and although, under the circumstances of this case, the law will presume, in the absence of anything showing to the contrary, that the deceased was in the exercise of due care at the time of the accident, it will not further be presumed that the injury was occasioned by the negligence or carelessness of the defendant, its servants or employees, for this would be building one presumption upon another, which the law does not permit. In other words, negligence upon the part of the defendant cannot be assumed from the fact that deceased will be presumed to have been in

the exercise of due care at the time of his injury, but must be proved by the plaintiff to entitle her to a recovery.

It is held in Buesching v. St. Louis Gaslight Co., 73 Mo. 219, that the law presumes that the plaintiff, in an action to recover damages for injuries sustained at the hands of another, was at the time of the injury in the exercise of ordinary care. Slight circumstances, however, in the absence of direct evidence, may overthrow this presumption. [Weller v. Railroad, 164 Mo. l. c. 198.] The same rule is announced in Railroad v. Gentry, 163 U. S. 353; Railroad v. Landrigan, 191 U. S. 461.

It is also urged against this instruction that it is predicated upon the fact that the presence of the deceased upon the coming-out track "was known to defendant, its agents or servants in charge of said engine, No. 251, or could have been known to them by the exercise of ordinary care upon their part, when there was no evidence tending to show that they, or either of them, knew of his presence there, or to show any fact from which the negligence of defendants, or either of them, might be deduced in failing to discover him upon the track in a position of peril." The evidence showed that it was not only the custom and rule of the company in moving the engine out on the main track from the "coming-out" track that some switchman should precede the engine, but that in fact some switchman "always does go" with it, and that he would either go ahead of the engine or ride the rear end of it as it backed out. It was also the custom of the company to send a sufficient force of men to the tracks in the yards in time of snow storms, as on the night of the accident, to clear the switches of snow, and the evidence showed that upon the night in question there were four men, including the deceased, engaged at this work, and being in the service of defendant company,

the engineer must have known it. These facts, we think, authorized that part of the instruction under consideration.

Defendant objects to said instruction upon the further ground that it is inconsistent with instruction numbered 5 given for defendant, which instruction tells the jury that "there is no proof of the negligence of defendants, or either of them, in not having discovered the said James Cahill at or near the railroad track, and in a position of peril, in time by the exercise of ordinary care to have avoided injuring him," while the court, upon the part of the plaintiff, instructed the jury that if the presence of the deceased upon the coming-out track "was known to defendant, its agents or servants in charge of said engine No. 251, or could have been known to them by the exercise of ordinary care upon their part," etc. The two instructions are not inconsistent. The jury might have found, under the evidence, that defendants knew, or by the exercise of ordinary care might have known, that the deceased was on the coming-out track, and still not be in a position of peril, and, even if he were, that there was no evidence tending to prove that defendants knew, or that they were negligent in not discovering his perilous position in time to have avoided injuring him. Said two instructions relate to different matters; that is, the knowledge by defendants, or of facts from which they might have inferred, that deceased was upon the coming-out track at the time of the injury, and the absence of evidence tending to show that the defendants, or either of them, were negligent in not having discovered Cahill at or near the track, and in a position of peril, in time by the exercise of ordinary care to have avoided injuring him. Deceased might have been on the coming-out track, and in a position of peril, and at the same time defendants be not guilty of negligence in failing to discover his perilous posi-

tion in time, by the exercise of ordinary care, to have avoided injuring him. The instructions, therefore, are not inconsistent, but in harmony with each other.

It is also insisted that plaintiff's instruction numbered 3 is vicious in that it assumes as an undisputed fact that the deceased was struck and killed by engine No. 251 upon defendant's coming-out track, which was one of the issues of fact in the case. This insistence is clearly without merit. In the first place, defendant company alleged in its answer that the injuries to the said James Cahill mentioned in the petition were caused by his own negligence and want of care at the time and under the circumstances *described in the petition.* In the next place, the evidence all tended to show that deceased was killed by an engine upon the coming-out track. While no person saw the accident, the circumstances all tended to show that he was killed in this way, and there was no evidence to the contrary. The assumption in an instruction of a fact about which there is no controversy, or in relation to which the evidence is clear and undisputed, will not be held to be error or prejudicial to the adverse party. [Carroll v. Railroad, 88 Mo. 239; Walker v. Kansas City, 99 Mo. 647; Burlington First National Bank v. Hatch, 98 Mo. 376.]

It is contended that defendant's demurrer to plaintiff's evidence should have been sustained, and the peremptory instruction asked by it to find for the defendant given. The circumstances connected with the accident, as shown by the evidence, tended to prove that Cahill was killed by engine 251. He had been working for the railroad company for about two years. It was his duty upon the night in question to sweep snow off of the switches, so that said switches might be thrown, and engines and cars pass from one track to another. In order to do this work it was necessary that he go between the tracks. He knew the exact time,

or approximately so, that engine No. 251 would be backed out of the roundhouse in the morning for the purpose of pulling a passenger train called the "Hummer" from Slater to Kansas City, and which left Slater at 6:10 a. m. Yet, with this engine approaching, making the ordinary noise of an engine operated by its own steam, and running at a rate of speed not exceeding three miles an hour, he allowed himself to be struck by it. His vision or hearing was unimpaired, and he could, even when the engine was within ten feet of him, have stepped aside and avoided the collision. The deceased was an employee, and, therefore, the measure of duty to him was not such as to a passenger or stranger. It was as much his duty to look out for approaching engines and cars as it was the duty of defendants to look out for him and to avoid injuring him. There can be no escape from the conclusion that if he had been in the exercise of due care and had watched for his own safety, he would and could have avoided the injury. Even if the defendants were negligent in not discovering his position in time to have avoided the injury, he was clearly guilty of contributory negligence in failing to look for the approaching engine.

The case of Aerkfetz v. Humphreys, 145 U. S. 418, is, in its facts, very much like the case at bar. Mr. Justice BREWER, speaking for the court, said:

"There is little dispute in the testimony, and the facts, as disclosed, are plainly these: The Delray yard is in the western part of the city of Detroit. In it were twelve tracks and side tracks, and the yard was used for the making up of trains. A switch engine was employed therein, and, as might be expected, was constantly moving forward and backwards, changing cars and making up trains. Plaintiff was a repairer of tracks. He had been employed there about eighteen months, and was familiar with the manner in which

the work was done.  The yard was about a quarter of a mile in length.  The tracks were in a direct line east and west, with nothing to obstruct the view in either direction.  At the time of the accident plaintiff was working near the west end of the yard, when a switch engine pushing two cars moved slowly along the track upon which he was at work, the speed of the engine being about that of a man walking.  Plaintiff stood with his back to the approaching cars, and so remained at work without looking backward or watching for the moving engine until he was struck and run over by the first car.  Upon these facts we observe that the plaintiff was an employee, and, therefore, the measure of duty to him was not such as to a passenger or a stranger.  As an employee of long experience in that yard, he was familiar with the moving of cars forward and backward by the switch engine.  The cars were moved at slow rate of speed, not greater than that which was customary, and that which was necessary in the making up of trains.  For a quarter of a mile east of him there was no obstruction, and by ordinary attention he could have observed the approaching cars.  He knew that the switch engine was busy moving cars and making up trains, and that at any minute cars were likely to be moved along the track upon which he was working.  With this knowledge he places himself with his face away from the direction from which cars were to be expected, and continues his work without ever turning to look.  Abundance of time elapsed between the moment the cars entered upon the track upon which he was working and the moment they struck him.  There could have been no thought or expectation on the part of the engineer, or of any other employee, that he, thus at work in a place of danger, would pay no attention to his own safety.  Under such circumstances, what negligence can be attributed to the parties in control of the train or the management of

the yard? They could not have moved the cars at any slower rate of speed. They were not bound to assume that any employee, familiar with the manner of doing business, would be wholly indifferent to the going and coming of the cars. There were no strangers whose presence was to be guarded against. The ringing of bells and the sounding of whistles on trains going and coming, and switch engines moving forwards and backwards, would have simply tended to confusion. The person in direct charge had a right to act on the belief that the various employees in the yard, familiar with the continuously recurring movement of the cars, would take reasonable precaution against their approach. The engine was moving slowly, so slowly that any ordinary attention on the part of the plaintiff to that which he knew was a part of the constant business of the yard would have made him aware of the approach of the cars, and enabled him to step one side as they moved along the track." The opinion concludes as follows: "We rest our affirmance of the judgment upon the grounds that under the circumstances there was no negligence on the part of the defendant, and that the accident occurred through a lack of proper attention on the part of the plaintiff."

Riccio v. Railroad, 189 Mass. 358, was a suit to recover damages for the death of a railroad employee, the circumstances being similar to those in this case. The court said:

"This is an action to recover damages for injuries resulting in the death of one Bianco, the plaintiff's intestate. At the trial it appeared that about 5:30 o'clock in the afternoon of January 2, 1904, Bianco, while at work shoveling snow in the large freight yard of the defendant at New Haven, in the State of Connecticut, was struck by a locomotive engine and mortally hurt. Snow had been falling all that day, and at the time of the accident was still falling. The wind

was blowing and it was dark. -The evidence tended to show that Bianco had performed similar work there the preceding winter, but it does not appear that he had worked during the winter in question before the day of the accident. On this day he began about ten o'clock in the morning and worked up to the time of the accident. We see no negligence on the part of the defendant. The plaintiff knew that he was at work in a railroad yard where trains and engines are frequently passing. There was no undertaking on the part of the defendant to give him warning, but he was expected to look out for himself. If the engineer failed to sound the whistle or ring the bell, it was not negligence for which the defendant was responsible. Both by the common law and by the law of the State of Connecticut, as we understand it to be under the decisions of that State which were put in the case as evidence, there is no evidence of negligence of the defendant. [Morris v. Railroad, 184 Mass. 368, 68 N. E. 680; Whittlesey v. Railroad, 77 Conn. 100, 58 Atl. 459, and cases cited.]''

To the same effect is Lynch v. Railroad, 159 Mass. 536. The following cases are also in point: Clancy v. Railroad, 192 Mo. 615; McGrath v. Railroad, 197 Mo. 97; Evans v. Railroad, 178 Mo. 508; Loring v. Railroad, 128 Mo. 349; Sharp v. Railroad, 161 Mo. 214; Ring v. Railroad, 112 Mo. 220.

Our conclusion is that there was no negligence shown upon the part of the defendant, and that the accident occurred through the want of proper attention on the part of the deceased.

The judgment is reversed. All concur.