DOMENICO GINNOCHIO, Admr., etc., Respondent, v.
ILLINOIS CENTRAL RAILROAD COMPANY,
Appellant.

St. Louis Court of Appeals, January 24, 1911.

1. APPELLATE PRACTICE: Jurisdiction: Filing Short Record.
Where the appeal is in the short form, the certified copy of
the judgment and order granting the appeal, when filed in the
appellate court in due time, confer jurisdiction on the appellate
court, in the first instance.

2. ————: Abstract: Failure to Set Out Judgment. Where the
appeal is in the short form, and the certified copy of the judg-
ment and order granting the appeal are filed in due time, the
appellate court will not decline to review the merits of the case
because of the omission of the printed abstract to recite that a
judgment was given in the cause, but the court will look to the
short transcript on file and supply the deficiency by reading
it into the abstract, in the interest of justice.

3. FOREIGN LAWS: Evidence: Judicial Notice: Pleading. In
an action against a railroad company by the administrator of
a deceased section hand, brought under the Illinois statute giv-
ing a right of action for wrongful death, while the reciprocal
duties of defendant and decedent, touching the right of recov-
ery, are to be considered and determined under the adjudicated
laws of Illinois, yet, in order to be considered, the law and
precedents of that state must be pleaded and proved as facts,
since the courts of this state cannot take judicial notice of the
laws of another state; and in the absence of such evidence, the
question of liability or non-liability is to be determined in ac-
cordance with the law of this state defining and fixing the rights,
and duties of the parties.

4. ————: ————: ————: Presumption. The presumption is,
that, except as to statute, the law of a foreign state is the same
as that of this state, unless it is known as a historical fact that
the foreign state was settled from countries other than those
which are the source of the common law, and were subject
to organized and civilized communities emanating from juris-
dictions other than those from which the common law was
obtained.

5. RAILROADS: Master and Servant: Injury to Section Hand:
Negligence and Contributory Negligence. A section hand,
working on the track in a railroad yard, stepped aside to let

a switch engine and cars pass, and immediately went back to work by order of the foreman, who then went away. The engine went up a short distance and came back pushing a car in front of it, without signals or lookout, and struck and killed the section hand, who was at work with his back to the danger. *Held*, that, there being no showing that any of the train crew actually saw the danger of decedent in time to prevent the accident, the railroad company was not liable for his death, the company owing no duty to a section hand except to avoid injuring him after discovering his peril; *held*, also, that decedent was guilty of contributory negligence in failing to look out for his own safety, when he must have known that the switch engine was at work near him, so as to preclude a recovery by his administrator.

6. ————: ————: ————: Duty of Master. A railroad company assumes no obligation to warn section hands of approaching trains, or otherwise look out for their well-being, except where they are actually seen to be in peril and oblivious to threatened danger.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin*, Judge.

REVERSED.

*Watts, Williams & Dines* and *Wm. R. Gentry* for appellant; *John G. Drennan* of counsel.

(1)   The court erred in overruling defendant's demurrer to the evidence.   (a)  Because the plaintiff's evidence show that the death of the deceased was caused by his own negligence in failing to look out for approaching trains, as it is the duty of section hands to do when working upon a track where they know trains are liable to pass and because defendant violated no duty which it owed deceased.   Davies v. Railroad, 159 Mo. 1; Evans v. Railroad, 178 Mo. 512; Wheat v. Railroad, 179 Mo. 572; Clancy v. Railroad, 192 Mo. 615; McGrath v. Railroad, 197 Mo. 97; Cahill v. Railroad, 205 Mo. 393; Brockschmidt v. Railroad, 205 Mo. 435; Riccio v. Railroad, 189 Mass. 358.   (b) The demurrer to the evidence should have been sustained because it affirmatively appeared from the testimony offered by the plaintiff himself that

he had no right to maintain this action. Vawter v. Railroad, 84 Mo. 679; Oats v. Railroad, 104 Mo. 514; Wilson v. Tootle, 55 Fed. 211; McGinness v. Car Co., 174 Mo. 225; Jones v. Railroad, 178 Mo. 526; Lee v. Railroad, 195 Mo. 400; Casey v. Hoover Bridge Co., 197 Mo. 62; Woodward v. Railroad, 10 Ohio St. 14; Lyon v. Railroad, 107 Fed. 386; Railroad v. Cragin, 71 Ill. 177; Mackay v. Railroad, 14 Blatch. 65; McCarthy v. Railroad, 18 Kans. 46; Taylor v. Railroad, 78 Ky. 348; Richardson v. Railroad, 98 Mass. 85. (2) The court erred in giving the instruction asked by plaintiff. The vice of it is that it permits the jury to find that deceased was in the exercise of ordinary care at the time of his injury, when the undisputed evidence offered by plaintiff shows that he was guilty of negligence which caused his death. Degonia v. Railroad, 123 S. W. 807.

*Joseph Wheless* for respondent.

(1) The record, as shown by appellant's abstract, is fatally defective in that it nowhere appears that any judgment was rendered against it in the court below. Neither the abstract of record proper nor the bill of exceptions anywhere shows a judgment. This is fatal. Ins. Co. v. Hurst, 129 Mo. App. 627; Cross v. Henderson, 129 Mo. App. 537; Redd v. Railroad, 122 Mo. App. 93; Williams v. Harris, 110 Mo. App. 538; R. S. Mo. 1909, sec. 2038; Harding v. Bedoll, 202 Mo. 630. (2) Appellant failed to make any objection to the refusal of its peremptory instruction or to the giving of the instruction for plaintiff—hence, the action of the trial court cannot be reviewed here. Sheets v. Insurance Co., 226 Mo. 617. (3) Suit for death damages may be brought and maintained in Missouri by any person empowered by the laws of the state where the death occurred to sue in a representative capacity. R. S. Mo. 1909, secs. 1736-1737; Vawter v. Railroad, 84 Mo. 679; Oates v. Railroad, 104 Mo. 514; Wilson v. Tootle, 55 Fed. 211; McGinniss v. Car & Foundry Co., 174 Mo.

225; Jones v. Railroad, 178 Mo. 528; Lee v. Railroad, 195 Mo. 400; Casey v. Hoover and Bridge Co., 197 Mo. 62; Charlton v. Railroad, 200 Mo. 413; Newlin v. Railroad, 222 Mo. 375; Gibson v. Railroad, 125 S. W. Rep. 453; Riley v. Grand Island Receivers, 72 Mo. App. 280; Railroad v. Cragin, Admr., 71 Ill. 177; Hanna, Admr. v. Railroad, 41 Ill. App. 116; Railroad v. Schroeder, 18 Ill. App. 328; Railroad v. Shacklett's Admr., 105 Ill. 364; Dennick v. Railroad, 103 U. S. 11. (4) The right of recovery in this case and the question of contributory negligence of deceased are to be determined by the laws of Illinois. Fogarty v. St. Louis Transfer Co., 180 Mo. 502; Newlin v. Railroad, 222 Mo. 391. (5) Contributory negligence is question for jury under laws of Illinois. Railroad v. Haskins, 115 Ill. 300; Railroad v. O'Connor, 115 Ill. 254; Railroad v. Kane, 70 Ill. App. 676; Railroad v. Otstott, 212 Ill. 429; Railroad v. Eggman, 161 Ill. 155.

NORTONI, J.—This is a suit for damages alleged to have accrued to plaintiff, administrator, for the use and benefit of the widow of his deceased, under the wrongful death statute of the State of Illinois. Plaintiff recovered a judgment in the amount of $5000 and defendant prosecutes the appeal.

Before looking into the merits of the controversy, it is essential to first dispose of a matter preliminary to the right of the court to review the appeal. It is argued by plaintiff that as defendant's abstract of the record on file here omits to recite the fact of the judgment given against it in the court below we are precluded from reviewing the merits of the case for the reason defendant has not complied with the statute by filing in this court an abstract of the entire record. It is true the printed abstract is deficient in the matter suggested. But the appeal is in the short form authorized by the statute and a duly certified copy of the judgment itself together with the order granting the appeal

is on file here. The certified copy of the judgment and order referred to appear to have been filed in due time and the filing of such judgment and order conferred jurisdiction on this court in the first instance. This being true, we ought not to decline to review the merits of the case because of the omission of the printed abstract to recite the fact that a judgment was given in the cause when it conclusively appears from the record on file that such judgment was had. It has been ruled several times that though the abstract of record omits to recite the fact of the judgment, the court will look to the short transcript on file and supply the deficiency by reading it into the abstract in the interest of justice. [Bank v. Hutton, 224 Mo. 42, 51, 123 S. W. 47; Coleman v. Roberts, 214 Mo. 634, 114 S. W. 39; Booth v. St. Louis, I. M., etc., R. Co., 217 Mo. 710, 117 S. W. 1094; Alt v. Dines, 227 Mo. 418, 126 S. W. 1035. See, also, Stone v. St. Louis Union Trust Co., 150 Mo. App. 331, 130 S. W. 825.]

The suit is prosecuted by the administrator of one, Finnazzo, deceased, who came to his death while in the employ of defendant as a section hand, engaged in the performance of his duties in defendant's switching yards at DuQuoin, Illinois. It proceeds under the wrongful death statute of the State of Illinois, which was pleaded and proved in the case, and authorizes a suit by such administrator for the use and benefit of the widow of decedent, who it appears resides in Italy. Decedent, was a resident of the State of Illinois where he entered into the contract of hire with defendant and afterward came to his death. In view of these facts, it is argued by plaintiff the question pertaining to the reciprocal duties of defendant and the decedent touching the right of recovery, aside from the wrongful death statute itself, is to be considered and determined under the adjudicated law of the State of Illinois pertaining to the relation of master and servant and especially reflecting the view of the courts of that state as to the reciprocal rights and

duties of section men and railroads when the injury or death occurs in circumstances similar to those involved here. The proposition is entirely sound when it is made to appear in the case what the adjudicated law of the foreign state is. Such was the case relied upon by plaintiff in support of the argument put forward. [See Fogarty v. St. Louis Transfer Co., 180 Mo. 490, 79 S. W. 664.] In that case the reported decisions of the Supreme Court of Illinois were introduced in evidence at the trial and therefore were properly before our own Supreme Court for consideration. But in the case now in judgment, though plaintiff introduced in evidence the wrongful death statute of the State of Illinois, to the end of showing the transmission to the administrator of a right of recovery in circumstances where the deceased himself might have maintained an action had death not ensued, he omitted to introduce any evidence of the state of the law of Illinois touching the reciprocal duties of the deceased and his employer, to the end of disclosing under what circumstances a cause of action might have accrued to the deceased had death not ensued from his injury. In this situation, the question of liability or non-liability is to be determined as it arises under the law of the forum defining and fixing the rights and duties of the parties, for we are not permitted to take judical notice of the law of a sister state. If a party relies upon the law of a sister state for his right of recovery or defense, such law and the adjudicated precedents thereon are a matter of fact which the rule of practice requires to be both pleaded and proved. [Morton v. Supreme Council, etc., 100 Mo. App. 76, 89, 73 S. W. 259; Garrett v. Conkling, 52 Mo. App. 654.] Unless it be where it is known as a historical fact that the foreign state was peopled by countries other than the source of the common law and were subject to organized and civilized communities emanating from jurisdictions other than those from whence the common law obtained, the presumption goes to the effect that the law of a foreign

state is identical with that which obtains in Missouri except as to statute. In this view, nothing appearing in evidence to the contrary, the law of Illinois touching the rights and obligations of defendant and deceased, aside from the statute referred to, is presumed to be the same as that of this state. [Tennent v. Ins. Co., 133 Mo. App. 345, 112 S. W. 754.] The case will therefore be disposed of and determined in accord with the decisions of our court which purport to interpret and apply the principles of the common law pertaining to the relation of master and servant and the reciprocal duties entailed when the contract of employment involves, and the injury is received while performing, the service of a section hand on a railroad.

Under the more recent decisions of our Supreme Court, it is obvious that plaintiff may not recover in this suit for the reasons, first, there appears no negligence on the part of defendant available as a cause of action to deceased had he survived his injury, and second, his own conduct was such as to preclude the right on the ground that it contributed to the injury. As before stated, deceased was a section hand in the employ of defendant and engaged in performing the duties of such occupation on its track at DuQuoin, Illinois when he came to his death. DuQuoin is a small station at which are maintained several switch tracks by defendant and the locomotive which occasioned, decedent's injury and death was engaged in switching cars in the yards at that point. The time of the injury was about eight o'clock in the morning and besides being in broad daylight, the view was open and unobstructed either way on the tracks for a long distance. Decedent and several of his associates were engaged in driving spikes into the ties adjacent to rails of the track and the locomotive with three cars attached passed by them to the north. As the locomotive approached, decedent and his companions stepped aside from the track in order to permit it to pass immediately after the passing of the locomotive:

and cars, the foreman, Morris, ordered the men to resume their work and walked away to another part of the yards. It appears the locomotive with cars attached proceeded north of where decedent and others were working only about 100 feet and stopped, at which point it disconnected two of the cars and returned to the southward with one car only, which was pushed before it. Decedent was standing with his back toward the approaching car so being pushed forward by the locomotive engaged in driving a spike and was run upon and killed.

It is conceded throughout the case that neither the engineer nor fireman saw the decedent while on the track, either at the time of approaching him or at the time he was run upon, for the reason the car which was being pushed before the locomotive obstructed their view. It appears, too, that no watchman was stationed on the car for the purpose of warning and that no signal was given of the approach of the train by sounding the whistle or ringing the bell. In the circumstances stated, if the question were open and untrammeled by decisions of the superior court of the state, we would be inclined to say that the precepts of ordinary care required the engineer to give some signal of warning that he was about to approach the men working on the track, for he knew they were thereabout, at least having passed them standing on the right of way but two or three minutes before when he moved the three cars to the northward. Especially is this true in view of the fact that upon disconnecting two of the cars, the engineer approached the point from the north where the men were seen assembled only a few moments before, both with his view obscured by the car in front of the engine and without a man stationed on such car as a lookout. It would seem that the engineer should have anticipated as a fact within the reasonable probabilities of the case that the section men had resumed their work on the track and the consequent possibility of injury if suddenly approached

without a signal of warning. We believe the principle reflected in the cases of Hinzeman v. Mo. Pac. R. Co., 182 Mo. 611, 81 S. W. 1134 and Hinzeman v. Mo. Pac. R. Co., 199 Mo. 56, 94 S. W. 973 authorizes the submission of both the questions of defendant's negligence and the contributory negligence of deceased to the jury in the circumstances stated. But the just doctrine of those cases is much impaired by the Supreme Court in Banc in the more recent decision of Degonia v. St. Louis, I. M., etc., R. Co., 224 Mo. 564, 123 S. W. 807. While the prior state of authority in Missouri recognized and enforced the right of a section hand to the exercise of ordinary care for his safety in circumstances which might imply injury as within the range of reasonable probability, unless signals or warning were given for his benefit, that doctrine is entirely repudiated by the judgment in the Degonia case unless it be in a case where the engineer actually saw the section hand in a perilous situation in time to have averted the injury by checking or stopping the engine. We say this, because the Degonia case rejects the rule of the Hinzeman cases which declared it the duty of the engineer to sound a warning to a section hand who was seen to be in a dangerous situation and oblivious thereto though the time were too short to stop the train and avert his injury. It seems that the more recent decisions of our Supreme Court adopt the view of the Supreme Court of the United States reflected in Aerkfetz v. Humphreys, 145 U. S. 418 and the Supreme Court of Massachusetts in Riccio v. N. Y., N. H., etc., R. Co., 189 Mass. 358 to the effect, first, that because of the peculiar nature of the employment, the railroad owes no duty to the section hand other than to avert his injury after the engineer has actually seen his perilous situation, and second, that if a section man is run upon and injured while performing his task, he is to be regarded as negligent in not looking out for the train. In other words, the doctrine is that in so far as section men are

concerned, the railroad is to be regarded under the law as entitled to a clear track, and such employees are to look out for their own safety, for there is a valid distinction in so far as the matter of duty pertains toward men engaged for the purpose of repairing the tracks and a stranger or other person who is not familiar with the operation of the road. The authorities referred to seize upon this distinction and press it forward, together with the fact that in the very nature of things those operating railroad trains ought not be required at all times to be looking out for section men and sounding alarms for their benefit, for it is said to be commonly known that section men remain upon the track, engaged in their work, until the very approach of the train, with which they are presumed to be familiar, and step aside to let it pass. It is reasoned that by entering into such an employment the section man undertakes to look out for his own safety and the railroad assumes no obligation to warn him of approaching trains or otherwise look out for his well-being, except it be in circumstances where he is actually seen to be in peril and oblivious to threatening danger.    Besides the cases above cited, see the following authorities in point: Cahill v. Chicago & A. R. Co., 205 Mo. 393, 103 S. W. 532; Degonia v. St. Louis, I. M., etc., R. Co., 224 Mo. 564, 123 S. W. 807; Van Dyke v. Mo. Pac. R. Co., — Mo. —, 130 S. W. 1. See, also, Hitz v. St. Louis, etc., R. Co., — Mo. App. —, — S. W. — (Springfield Court of Appeals. Not yet reported.) However, the Degonia case, supra, as we understand it, goes quite beyond this and announces the rule that there is no obligation on the part of the railroad master to sound a warning for a section man seen to be in peril and oblivious to danger which may be enforced as actionable negligence, unless the case reveals that the injury might have been averted after the engineer actually saw the man in a situation of peril so as to invoke the humanitarian rule.    The repudiation of the doctrine of the Hinzeman cases by the Supreme Court in the Degonia case evinces

this to be true, for the proposition above stated was affirmed in those cases and rejected in the Degonia decision. [See Degonia v. R. Co., 224 Mo. 564, 596, et seq. 123 S. W. 807.] It would seem that the rule of non-liability in cases circumstanced as this one should proceed, if at all, upon the theory of assumed risk, for by the reasoning of the authorities the rule exempting the master from actionable negligence in omitting to give signals is said to flow from the peculiar nature of the employment, in that the section man undertakes to look out for his own safety and that the railroad does not undertake to give warning of the approach of trains. In such circumstances, it appears that the employee assents to the risk incident to the usual operation of the road and undertakes in his contract of hire to look out for his own safety, while the master is thereby relieved from the obligation to signal the servant as it would a stranger on the track. But though the courts are enforcing the rule with great strictness, the judgments seem to be predicated on the theory both that there is no negligence on the part of the master in omitting to warn the section man, unless he is actually seen in danger, and that if he is injured in such circumstances he should suffer the consequences as though he was negligent in failing to perform his part of the undertaking which devolves the duty upon him to look out for the danger which is known to be ever present on a railroad. If the non-liability of the railroad company is to be based upon the score of negligence and contributory negligence, as the cases seem to hold, we believe the true ground of the doctrine to be that suggested by the Springfield Court of Appeals in Hitz v. St. Louis, etc., R. Co., supra, which goes to the effect that the engineer is not required to anticipate as a matter within the range of reasonable probabilities that section men will remain upon the track in the very face of known danger from approaching trains, and if they do, it is at their own risk though signals are not given.

Some of the cases lay stress upon the fact that section men know the schedule time of trains and are required to govern themselves accordingly. It is true defendant's engine in this instance was not operating on schedule time and this particular feature of some of the cases is absent, but it appears that the engine was engaged in switching in defendant's yards, with which decedent was entirely familiar. He was a man about thirty years of age and had been in defendant's employ on the section at DuQuoin, Illinois, for more than two years and his view was unobstructed for a distance quite beyond anything essential to the purpose of the case. It is obvious that one engaged on the track in switching yards where a locomotive is known to be moving cars backward and forward is possessed of notice and knowledge of probable danger equal to that possessed by one who encounters scheduled trains, if not more so. In the case of an engine so switching, it seems that the warning of danger is ever present, while with trains approaching on a regular schedule, it is occasional only. The locomotive and car which occasioned the injury and death of plaintiff's decedent were at the time running about four miles an hour which is about the rate of a fast walk for a man. It is, therefore, entirely clear that with the slightest attention to the movement of the locomotive decedent could have gotten out of the way had he been watching it and not awaiting signals which, under the decisions, the law did not require to be given. But it is unnecessary to reason minutely on the details of fact which are conclusively established, for the reason that, under the law of such cases as now determined in this state, defendant owed decedent no duty to warn him of the approaching train, unless the engineer actually saw him in a position of danger in time to have averted the injury. It is conclusively shown that neither the engineer nor fireman nor others on the locomotive saw decedent after starting the train southward before he was injured. Moreover, under the doctrine of the same

authorities above cited, if defendant owed decedent any duty in the circumstances of the case, then his negligence in omitting to look out for his own safety when he knew the engine was switching thereabout is such as precludes a right of recovery.

The Constitution commands that the courts of appeals shall be guided by the last previous ruling of the Supreme Court on any question of law or equity. In view of this command, it becomes our duty to reverse the judgment and declare there is no right of recovery for the reasons above stated. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.