# ALICE EVANS v. WABASH RAILROAD COMPANY, Appellant.

### Division Two, December 9, 1903.

1. **Contributory Negligence: QUESTION FOR JURY.** When reasonable minds may fairly differ upon the question as to whether or not the injured party was guilty of negligence contributing directly to his injury, the case is one for the consideration of the jury.

2. ———: TAKING POSITION OF DANGER. Where a section hand voluntarily puts himself in a dangerous position on the track at a time and place when and where he has no right to be, and when he must know that the railroad company does not require or anticipate his presence there, the injuries received are the result of his own lack of common prudence.

3. ———: ———: CASE STATED. Deceased was an experienced section hand, familiar with the schedule of a fast through freight, and engaged in removing weeds from the track and right of way, near a station at which the train did not stop. While in plain view of the men, it sounded the station whistle within easy hearing of deceased, who at the time was not on the track or in a place of danger, but without looking or listening for danger, he stepped in front of the train and was killed. *Held*, that the trial court should have declared as a matter of law that his widow could not recover damages for his death.

4. ———: ———: WARNING BY FOREMAN. It is not the duty of a foreman to warn section hands that a train is coming, if they are not at the time in a place of danger.

5. ———: SECTION HANDS: DUTY OF ENGINEER. An engineer in charge of a train has the right to presume that section men at work on the track will keep out of danger, and not until he has good reason to believe that they are not going to do so, is it his duty to employ all possible means to stop the train in time to avoid injuring them.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates, Judge.*

REVERSED.

*Geo. S. Grover* for appellant.

Upon the undisputed facts in this case the plaintiff was not entitled to recover. Loeffler v. Railroad, 96 Mo. 267; Reng v. Railroad, 112 Mo. 220; Loring v. Railroad, 128 Mo. 349; Epperson v. Telegraph Co., 155 Mo. 346; Ward, Adm'r, v. Railroad, 56 S. W. 807; Sinclair v. Railroad, 133 Mo. 241; Kreis v. Railroad, 148 Mo. 329; Davies v. Railroad, 59 S. W. 982; Sharp v. Railroad, 61 S. W. 829.

*Meservey, Pierce & German* for respondent.

(1) When reasonable men may fairly differ upon the question as to whether there was negligence or not, the matter is for the jury. Dixon v. Railroad, 109 Mo. 413; O'Mellia v. Railroad, 115 Mo. 221; Donohue v. Railroad, 91 Mo. 364; Barry v. Railroad, 98 Mo. 70; Weller v. Railroad, 164 Mo. 199; Comstock v. Railroad, 56 Kan. 228; Goodfellow v. Railroad, 106 Mass. 461; Crowley v. Railroad, 65 Iowa 658. (2) Even if plaintiff's husband was negligent in failing to watch for the approach of the train, still if the employees of defendant saw him in a dangerous position on the track, or might, by the exercise of ordinary care and diligence, have seen him and failed to exercise ordinary care to prevent the injury, defendant is liable. Sullivan v. Railroad, 97 Mo. 113; Kelly v. Railroad, 95 Mo. 279; Guenther v. Railroad, 108 Mo. 18; Hanlon v. Railroad, 104 Mo. 381; Lynch v. Railroad, 111 Mo. 601; Schlereth v. Railroad, 115 Mo. 87; Lloyd v. Railroad, 128 Mo. 595; Chamberlain v. Railroad, 133 Mo. 587; Powell v. Railroad, 59 Mo. App. 626; Morgan v. Railroad, 159 Mo. 262; Erickson v. Railroad, 71 S. W. 1022; Livingston v. Railroad, 71 S. W. 136.

BURGESS, J.—This is an action under the Damage Act, in which plaintiff recovered judgment against the defendant for five thousand dollars damages for

negligently running its train of cars over and killing her husband, James Evans. Defendant appeals.

The accident occurred in the town of Randolph, Clay county, on the 15th day of October, 1898. Within the last four or five years prior to the death of deceased, he had worked several times as a laborer for defendant on its road in said county. He was an active man, forty-five years of age, at the time of his death, with good eyesight and hearing. On the day he was killed he was engaged in cutting weeds along the railroad track, at a point on or near a road crossing, about one hundred to one hundred and twenty-five yards east of the Wabash depot in said town. He was struck by a locomotive, to which was attached a meat train running at the rate of about thirty or forty miles an hour.

Evans was one of a force of section men, composed of Charles McCain, foreman, Jeff Prewett, John Tyler, Jesse Endicott, and himself. At the point where Evans was killed, the railroad track runs almost due east and west, and the section men were employed in cutting the weeds on it, and a few feet on each side of it.

The track of the railroad is parallel with and about six or eight feet north of the north rail of the Wabash track. Jeff Prewett was ahead, and was a short distance east of the crossing; Evans, the deceased, came next. Both Prewett and Evans were on the north side of the track. Deceased was working toward the east, with his back to the west, and at the time he was struck, was just north of the rail, between the north end of the ties and the rail, at a point either on or very close to a road crossing. McCain, Tyler and Endicott were all on the south side of the track. The train was running east, and the track was nearly level and straight for about a mile west, so that the men at work were in full view of the engineer and fireman for a distance of more than a mile west of Randolph station.

At that time a regular fast freight train, east

bound, which was not scheduled to stop at Randolph station, passed that place at 2:12 in the afternoon.

This train had been running on that time-card for a long time prior to October 15, 1898, and was well known to the people of Randolph and vicinity as the "meat train."

The train was exactly on time on October 15, 1898.

The train whistled at the whistling post, a quarter of a mile west of Randolph station, and the bell-ringer on the engine, an automatic contrivance, was started at the time the whistle was blown, so that the bell rang, from the whistling post, until the train passed Randolph station.

It was a clear day with the wind blowing from the southwest.

The train contained twenty-eight loaded cars, and was running about thirty miles an hour, and its speed was not slackened as it approached Randolph station, as it was not scheduled to stop there.

At that point the track of the Hannibal & St. Joseph railroad is about ten feet west of the defendant's track.

The defendant's track, between its rails, is four feet eight inches and a half wide.

The front end of the engine in use that day was nine feet and two inches wide, so that the engine projected outside each rail one and a half to two feet.

After whistling at the post, the engineer then in charge of defendant's engine, whistled one long blast as a station signal, and then gave a short whistle, in answer to a signal from the conductor not to stop at the station.

Seeing a group of men working close to the track near the crossing just west of Randolph station, the engineer, when about three or four hundred feet west of the crossing, whistled again, a danger or warning signal—four short quick blasts.

The men, as the engineer saw them, separated then, some on one side of the track, and some on the other.

Both the engineer and the firemen were in their proper places on the engine all the way from the whistling post, up to and past Randolph station.

After coming within sixty feet of the men, the engineer's view of them was shut off by the front part of his engine.

Evans was never seen by either the engineer or the fireman, in a position of either danger or peril, prior to the accident. In fact, they did not know that any one had been struck by the engine until after they had reached Lexington Junction, some distance east of Randolph station.

Even after receiving a danger signal, if one had been given, as it was not, it would not have been possible to have stopped the train in less than a quarter of a mile, after receiving and understanding such signal.

All the eyewitnesses to the accident agree that Evans never paid the slightest attention to the approach of the train, though it was in plain view for at least a mile west of Randolph station.

Some of them, including Endicott, say that he was stooping over cutting weeds with a shovel, within two feet of defendant's track, looking east, all the time the train was in sight, and until it struck him, and that he never changed his position or looked up during that time, and that he was struck and instantly killed by the front part of the engine.

Prewitt, however, who was about twenty-eight feet from Evans, on the same side of the track with him, says that he (Prewitt) both saw and heard the approaching train, and kept out of its way, while Evans walked east on the ends of the ties on the Hannibal track, until the train was within sixty or seventy-five feet from him, and then started across directly in front of it. The foreman, McCain, and Prewitt, each shouted a warning to Evans in a loud voice.

Evans paid no attention to these warning cries, but stepped on the defendant's track, and was almost instantly thereafter struck and killed by the engine.

Tyler, who was about fifty feet from Evans, heard the whistle, at the whistling post, and saw the approaching train a mile away, but did not hear either the bell ringing or the warning cries of Prewitt and McCain, and did not see Evans struck and killed.

McCain, the foreman, was on the same side of the track with Tyler, but nearer to Endicott and Evans.

He saw the train when it was two miles away, and afterwards at intervals, as it approached the station, and heard the noise of the train, as well as the various whistles described by the engineer.

He was standing on the opposite side of the track from Evans, and about twenty feet from him.

Evans started towards the defendant's track from the Hannibal track when the rapidly moving train was about sixty feet away from him.

McCain shouted to Evans "Look out for Ninety!" (the schedule number of the "meat train"), but Evans paid no attention to the warning, and immediately thereafter stepped in front of the rapidly moving train and was almost instantly thereafter struck and killed by it.

There was no rule in force as to signals or warnings to section men, as each man was supposed to look out for himself.

The court gave a number of instructions on both sides of the case, and refused several asked by defendant, among which was one in the nature of a demurrer to the evidence, which reads as follows:

"The court instructs the jury that, under the pleading and all the evidence in this case, the plaintiff is not entitled to recover."

From our view of the case this is the only instruction necessary for us to pass upon.

It is asserted by defendant that upon the undisputed facts in evidence in this case, the plaintiff was not entitled to recover, and that the court should have so instructed the jury. In passing upon this question we proceed to do so with due appreciation of the familiar rule announced by this court in Donohue v. Railroad, 91 Mo. 364; Dixon v. Railroad, 109 Mo. 413; O'Mellia v. Railroad, 115 Mo. 221, and Weller v. Railroad, 164 Mo. 199, to the effect that, when reasonable minds may fairly differ upon the question as to whether or not the deceased was guilty of negligence contributing directly to his injury, the case is one for the consideration of the jury. The question, then, is, does the evidence conclusively show that deceased was guilty of negligence in stepping upon the track in front of and in proximity to the approaching train? That he voluntarily put himself in a dangerous position at a time and place when and where he had no occasion to so do, and when if he had thought, looked or listened, he would not have done so, is, we think, clear. It is held in Loeffler v. Railroad, 96 Mo. 267, that where a person voluntarily put himself in a dangerous position at a time and place when and where he had no right to be, and when he must have known that the defendant railroad company did not require or anticipate his presence, the injuries received by him were the result of his own want of common prudence.

The deceased was an experienced railroad man, having worked for defendant as a section hand on different occasions, and must have known the exact time or at least approximately when the meat train would pass along, and therefore it was his duty to be on the alert, in order that he might keep out of its way. His co-laborers, including the foreman, were all engaged in removing weeds, with a long stretch of straight and unobstructed track upon which they could have seen a train

approaching had they been mindful of their own pres-
ervation for the distance of at least one and one-half
miles. It was not the duty of the section foreman to
warn the section hands that a train was coming, even
if he saw it. While the meat train did not stop at
Randolph, it sounded the station signal within easy
hearing, and within plain view of the section men. De-
ceased was not at that time on the track or in a place
of danger, but without looking or listening for danger
stepped in front of the approaching train, was struck
thereby and killed.

In Loring v. Railroad, 128 Mo. 359, GANTT, J.,
speaking for the court says:

"Loring was not a trespasser in the yards, but this
in nowise absolved him from the duty of looking for a
train before stepping upon the track. If the law exacts
of a traveller upon a highway the duty of looking and
listening, *a fortiori* it demands of an employee, familiar
with the usages and dangers of a switch yard, that he
look before he steps upon a track upon which his daily
experience teaches him a train, or an engine, may pass
at any moment. [Aerkfetz v. Humphreys, 145 U. S.
418; Elliott v. Railroad, 150 U. S. 245.] It was simply
impossible for Loring to have looked west for an ap-
proaching train, and not have seen the cars being shoved
by the switch engine. The track was wholly unob-
structed; it was day light; the cars were in plain view
and close at hand, and in such a case, when he stepped
upon the track and was struck by the train, he would
be conclusively presumed to have disregarded his duty
to look and listen, if the positive and unequivocal evi-
dence of all the witnesses had not affirmatively estab-
lished that he did not look, and his negligence precludes
his right to recover. The only way this conclusion can
be avoided is by showing that the engineer was negligent
in not stopping the train after he knew Loring was down
and under the cars. . . .

"Upon the whole case our conclusion is that the

evidence wholly fails to sustain the theory of the peti-
tion; that there was no evidence of negligence by those
in charge of the switch engine and cars attached thereto,
but that Loring came to his untimely death by reason
of his thoughtlessness in stepping immediately in front
of the train which killed him, and the trainmen did not
discover his peril in time to save him, and as these facts
appeared from the uncontradicted evidence, the trial
court should have declared as a matter of law that
plaintiff could not recover.''

In Davies v. Railroad, 159 Mo. 1, under permission
from the city authorities, the contractors for a building
had deposited in the street just in front thereof, large
quantities of building materials, so that only enough
space for a wagon remained between the street railway
tracks and the materials deposited. Plaintiff with his
back to an approaching car, was assisting in unloading
some heavy iron beams, and in order to do this he was
compelled to use a lever and to stand in the rear of the
wagon and slightly within the range of the cars, which
were constantly passing. He was so engaged at the
time of his injury, did not see the approaching car, it
was not checked, no bell was rung, no warning given
of its approach, there was a full and unobstructed
view of the track for some distance, and while plaintiff
was unloading this wagon, two other cars had passed,
and being warned of their approach he merely had to
step aside or turn half way around to escape injury.
Plaintiff had been employed for some time at this point,
knew that cars were continually passing, and admitted
that he was aware of the danger. There was no allega-
tion that the injury was wantonly or willfully done.
*Held,* that, under these facts shown by plaintiff's plead-
ing and evidence, it was not incumbent on defendant to
show plaintiff's contributory negligence, but that the
court should have decided as a matter of law that, upon
plaintiff's own showing, he could not recover, and it

was error to submit the case to the jury.   [See, also, Sharp v. Railroad, 161 Mo. 214.]

But plaintiff claims that even if deceased was guilty of negligence, yet if defendant's employees in charge of the train became aware of his peril, or might, by the exercise of ordinary care have become aware of it, in time to have enabled them by the exercise of ordinary care to have averted the injury, and they failed to exercise such care, plaintiff was entitled to recover.   It will not do to apply this rule in all of its strictness to section men whose business it is to work upon and keep in repair railroad tracks, for they are supposed to look after their own personal safety, and to know of the time at which trains pass, to look for them and see them, and to move out of the way.   It is of common knowledge that these men often voluntarily wait until trains get dangerously close to them, and then step out of danger and let them pass by, and to require trains to stop upon all such occasions, when section men are discovered at work on the track, would not only be imposing upon railroads unjust burdens, but would greatly interfere with traffic and travel.   Those in charge of trains have the right to presume in the first place that such persons will keep out of danger, and not until they have good reason to believe they will not do so, and then fail to use all proper means at their command to prevent injuring them, in consequence of which they are injured, or are injured by reason of the willful negligence of those in charge of the train, should the defendant be held liable, and there was nothing of that kind in this case.   Our conclusion is that the demurrer to the evidence interposed by defendant should have been sustained.

The judgment is reversed.   All concur.