JEANETTE C. HAMMONTREE, Administratrix of Estate of ROBERT P. HAMMONTREE, v. JOHN BARTON PAYNE, Agent of United States, Appellant.

Division Two, December 22, 1922.

1. **NEGLIGENCE:** Contributory: Clerk in Switch Yard: None on Part of Defendant. An opening between cars on the tracks of a railroad switch yard was left for the passage of employees from one

side of the yard to the other, and this opening constituted a much-used passway. On one side of the passway a switching crew with an engine and a single car were endeavoring to couple onto a string of four cars standing on the same side of the passway. Their first effort failed, and the second and more forceful effort caused the four cars to move back quickly and close the gap of five or six feet through which an employee, a clerk for ten years in the building and bridge department, was passing and received injuries which caused his death. He was familiar with the work in which the switching crew were engaged, he habitually crossed the switch yards, the time was broad day, the engine was not over two hundred feet from him, and nothing obstructed the view. The foreman of the crew caught a glimpse of him fifty or sixty feet from the transfer track, walking towards it, but did not see him again until after he was injured, and the engineer, fireman or brakeman saw him not at all. *Held*, that it was his duty not to attempt to pass through the opening between the cars until it was apparent there was no danger, and that he was guilty of contributory negligence, and no negligence on the part of the defendant having been shown, his administratrix cannot recover damages either under the Federal Employers' Liability Act, under which the action was brought, or under the Missouri law.

2. ————: Engineer's Duty to Slow Up Engine: Section Men and Employees. Railroad section men are supposed to be familiar with the movement of engines in switch yards and to look out for themselves, and the engineer owes them no duty to slow up the engine unless they are actually seen to be in a perilous position; and the same rule must be applied to an experienced clerk in the roadmaster's department, who frequently crossed the switch yards, was thoroughly familiar with the making up of trains, saw the switching movement which resulted in his injury, and was not seen to be in a dangerous situation, although he was at the time traveling in a much-used path across the tracks.

3. ————: Pedestrian in Pathway Across Switch Yard: Public User: Employee. The rule that a railroad company is liable for injury to a traveler in a passway over its railroad other than a public crossing where a public user has become so general that the company has no right to expect a clear track and its trainmen are therefore required to be on the lookout for a person on the passway, is not available to an experienced railroad employee who had knowledge of the switching movement, was familiar with the making up of trains in the switch yard over which the passway led, knew that cars were frequently pushed across the pathway, was not seen within fifty feet of the transfer track on which the cars

were driven across the pathway, and their movement was not sudden and unexpected.    [Cases distinguished.]

4. ——: None On Part of Defendant: Recovery Under Federal Act. Notwithstanding the employee of a railroad company, engaged in interstate commerce, was guilty of contributory negligence, he can recover for his injuries in an action brought under the Federal Employers' Liability Act, if defendant was negligent; but negligence on the part of defendant must be established in order to recover under that act, and if no negligence on defendant's part is established he cannot recover damages either under the Federal act or the Missouri law.

Appeal from Polk Circuit Court.—*Hon. C. H. Skinker,* Judge.

REVERSED.

*W. F. Evans, John H. Lucas, William C. Lucas* and *W. W. Wood* for appellant.

(1)   The court erred in refusing to give the peremptory instruction requested by the defendant. The pleadings and evidence wholly fail to constitute actionable negligence against the defendant. (a) The proximate cause of the death of the deceased was his own act.   Flack v. Railway, 285 Mo. 28, 48.    (b)   The humanitarian rule has no application to the instant case.   Federal Liability Act is purely statutory.   Gray v. Southern Ry. Co. 241 U. S. 333, 60 L. Ed. 1034.

*Herman Pufahl, C. W. Hamlin,* and *Hamlin & Hamlin* for respondent.

(1)   One actually performing a service essential to or so closely connected with the business of interstate commerce as to be substantially a part of it is to be regarded as being engaged in interstate commerce within the meaning of the Federal Employers' Liability Act. Graber v. Railway Co., 159 Wis. 414; Hardwick v. Wabash, 181 Mo. App. 156; Penderson v. Railroad, 220 U.

S. 146, 57 L. Ed. 1125; Crandall v. Chicago & G. W. Railroad, 150 N. W. 165; Central Railroad Co. of New Jersey v. Colasurdo, 192 Fed. 901; N. C. Railroad Co. v. Zachari, 58 L. .Ed., 591; Deal v. Coal & Coke Railroad Co., 215 Fed. 285; Jones v. C. & O. Railroad, 149 S. W. 951; Lambarda v. Boston & M. R. Co., 223 Fed. 427; Lamphere v. Ore. Railroad & Nav. Co., 196 Fed. 336; M. K. & T. Railroad Co. v. Rentz, 162 S. W. 959. The test as to whether one is engaged in interstate commerce is whether the work being done is in direct furtherance of interstate commerce or was so closely connected therewith as to necessarily become a part thereof. Glidewell v. Quincy O. K. C. R. Co., 236 S. W. 677. (2) Where a railroad company has for many years permitted a passway to be kept open across its tracks at a point that would otherwise be private grounds and permitted by long acquiescence the public and especially its own employees to freely use the same, said company can no longer, in the operation of its trains, expect a "clear track" at the point where this passway crosses its tracks and is therefore under the necessity, when desiring to pass this point with its trains and engines, of using ordinary care in looking out for and warning any persons who may, at the time, be using or attempting to use said passway. To do less is actionable negligence on the part of the railroad company. Dalton v. Railroad Co., 276 Mo. 663; Ahnefeld v. Wabash Railroad, 212 Mo. 280, 294; Murphy v. Wabash Railway Co., 228 Mo. 56, 76; LeMay v. Mo. Pac. Ry. Co., 105 Mo. 361, 370; Frye v. Railroad Co., 200 Mo. 377, 400; Eppstein v. Mo. Pac. Ry. Co., 197 Mo. 720; Hufft v. Railroad, 222 Mo. 286, 301; Tibbels v. Great Western Railroad, 219 S. W. 109.; Beard v. Mo. Pac. Ry. Co., 197 S. W. 907. (3) Under the Federal Employers' Liability Act negligence upon the part of the defendant must be shown in order to entitle plaintiff to recover, yet defendant will be liable where through its employees it is guilty of any causation negligence causing injury to an employee, no mat-

ter how slight the negligence is in comparison to the negligence of the injured employee. N. Y. C. & St. L. R. Co. v. Niebel, 214 Fed. 952; Sandidge v. Railroad Co., 193 Fed. 867; Norfolk & Western Railroad v. Earnest, 229 U. S. 114, 57 L. Ed. 1096. It is only when the defendants' acts are no part of the cause of the injury that the defendant is free from liability under the Federal Employers' Liability Act. Grand Trunk Western Railway Co. v. Lindsay, 201 Fed. 884; L. & N. R. Co. v. Heinnig's Administratrix, 171 S. W. 853; Ross v. Railroad, 144 Pac. 844. The negligence of the foreman or switching crew in the instant case need not have been the sole and only cause of the injury to the intestate in order to charge the railroad company with negligence. If its negligence contributed to the accident, that is to say, if its action had a share in bringing about the disaster, the defendant would be liable. Sandidge v. Railroad Co., 193 Fed. 867, 875. (4) While the humanitarian rule as applied in most states has been held not to apply in suits brought under the Federal Employers' Liability Act, still the courts do hold that when the agents, servants and employees of the railroad company are aware of impending danger to another in time to prevent the catastrophe and fail to use reasonable care to prevent it, it is guilty of negligence. Gray v. Southern Railway Co., 241 U. S. 333; Pa. Co. v. Cole, 214 Fed. 948. (5) It is not clear whether the appellant is seeking to make a point on the fact that because intestate was injured while on his way back from his midday meal, he was not at that instant time engaged in interstate commerce, but if that is their meaning we would assert this proposition of law: Where a party is employed during the day and has time off for lunch that party is as much in the pursuit of his employment when going to and returning from his meal as he is at any other part of the day when he is actually performing work for his employer. Lumbermen's Reciprocal Association v. Benhken, 226 S. W. 154; N. C. R. Co. v. Zachari, 58 L. Ed.

591; M. K. & T. R. Co. v. United States, 231 U. S. 112, 119; Graber v. Ry. Co., 159 Wis. 414.

DAVID E. BLAIR, J.—Action under the Federal Employers' Liability Act for wrongful death of plaintiff's decedent. Judgment below was for plaintiff in the sum of $10,000 and defendant has appealed.

Respondent was the wife and is now the administratrix of the estate of Robert P. Hammontree, deceased. On November 24, 1919, Hammontree suffered such injuries through alleged negligence of a train crew in the switch yards of the St. Louis-San Francisco Railway Company at Springfield, Missouri, that he died two days thereafter. Deceased was a clerk in the bridge and building department of said railroad at Springfield. While returning from his lunch on said day he was fatally injured in passing between two cuts of freight cars through an opening left therein for the passage of employees from one side of the yard to another. An engine with one car was attempting to couple onto a string of four cars. The coupling was not made at the first effort, and a second and more forceful effect was made, which caused the four cars to move backwards quickly and close the gap of five or six feet through which deceased was passing. He was caught between the couplers of the cars and his death resulted.

Deceased had worked in the same office for about ten years and, according to some of the witnesses, habitually crossed through the switch yards, rather than go around the public streets. There was a much-used path through the yards where employees crossed from one side of the yard to the other in going to and from the yardmaster's office. The string of freight cars standing on the transfer track had been cut, and an opening left convenient for crossing the track at this pathway. Shortly before one o'clock and in broad daylight, the switching crew of defendant, consisting of an engineer and fireman, a brakeman and foreman, was engaged in

the switching movement above referred to. The engine was not over two hundred feet from deceased as he came along the path near the corner of the yardmaster's office. No obstruction cut off his view of the engine or any part of the switching movement. He was an experienced man and, by frequent observation at least, familiar with the work the switching crew was attempting to do.

The foreman of the switching crew testified that he caught a glimpse of the deceased fifty or sixty feet from the track as he came around the yardmaster's office walking in the direction of the transfer track. He did not see him again until after he was injured. None of the other employees connected with such switching movement saw the deceased at all.

The defendant operates a railroad through Missouri and into adjoining states, and a large portion of its business is interstate commerce. Deceased was a clerk in the bridge and building department, which had to do with the building of bridges and culverts for said railroad, over which both intrastate and interstate trains passed.

The petition charged negligence of the switching crew in the following language:

"That when the agents, servants and employees aforesaid first attempted to make the coupling with the four cars aforesaid, they saw the deceased going towards said passway and saw his perilous or apparently perilous position in time to have warned him of the danger in trying to cross said track through said passway, or by the exercise of ordinary care and diligence could have seen him and warned him of the danger in trying to cross said track through said passway or could have placed a watchman at said passway, while they were attempting to make the coupling aforesaid, or they could have waited until he crossed said track before making the same effort to couple said cars, and knowing the dangerous position and peril of the deceased, or which by

the exercise of ordinary diligence could have known, they, the said servants, agents and employees of the defendant, without giving him any signal or warning and without waiting for him to cross said track, caused the engine and car attached thereto aforesaid to strike and run against the four cars aforesaid with such force that they were pushed or shoved across the passway aforesaid and against the cars standing on the west side thereof.''

Defendant offered no evidence and stood on its demurrer.

The first question which naturally suggests itself is whether or not the defendant company was guilty of negligence. By reason of his long employment deceased was more or less familiar with railroad operation and particularly with the movements of switching cars in the switch yards, which the evidence shows he crossed very frequently. He knew how switching operations were performed. The members of the switching crew must also have known that deceased was familiar with the manner in which such work was performed. The foreman caught a glimpse of deceased near the corner of the yard house fifty or sixty feet away, apparently approaching the transfer track. He was not seen thereafter until he was injured. If the foreman had continued to observe him and the other members of the crew had seen him approaching the track, they would only have seen a man familiar with switching operations and an old employee of the railroad company approaching the track. They would have seen him clearly because it was broad daylight and they must be regarded as knowing that deceased could plainly see them and see the engineer attempting to couple on to the cars. They had no reason to think, with such knowledge on deceased's part, that he would not seasonably stop. [State ex rel. v. Reynolds, 233 S. W. 219, l. c. 222.] They had no reason to think that he would negligently attempt to pass through the opening between the cars until it

was apparent there was no danger in doing so.  The deceased was himself guilty of contributory negligence in attempting to pass between cars when, in plain sight, and not over two hundred feet away, an engine was attempting to couple onto them.  It was his business to look to see what switching movements were being made. To have looked would have been to have seen.  But, if the case comes within the Federal Employers' Liability Act, contributory negligence of the deceased is not a complete defense, and at this stage of the case we are only considering the negligence of the defendant.

We think the rule governing liability for injuries to section men and others working on or near the track applies in the present case.  At least, the reasoning which governs the rule laid down in that sort of cases applies here.  An engineer is under no duty to slow up his engine when approaching section men working on the track.  [Degonia v. Railroad, 224 Mo. l. c. 592; Evans v. Wabash, 178 Mo. l. c. 517; Cahill v. Railroad, 205 Mo. l. c. 408.]  The reason for the rule laid down in these and similar cases is that section men are supposed to know the time schedules of the various trains and to be familiar with their movements and to look out for themselves. The same rule has been applied to a yard clerk whose duty took him to all points of the switch yards.  See Rashall v. Railroad, 249 Mo. 513, wherein it was held that the railroad company owed no duty to look out for an employee, unless he was actually seen in a perilous position.  Certainly the switching crew in the instant case would owe no greater duty to look out for deceased further, after it was apparent he saw the switching movement in which they were engaged, than an engineer would be toward section men engaged in track work whose duty it is themselves to look out for trains.

To hold that the deceased was not engaged in his duties as clerk in the bridge and building department and therefore not an employee at the time and as such engaged in his duties, would at once cut out from under

the respondent the sole ground on which she could have any hope of recovery, to-wit, that the deceased was at the time of his injuries actually engaged in interstate commerce. If he was not so engaged, she is clearly barred by his contributory negligence.

All the cases cited by respondent where injury occurred at points on railroad tracks other than public crossings, where user by the public had become so general that the railroad had no right to expect a clear track, were cases of others than employees familiar with the particular train movement. In Dalton v. M. K. & T. Railroad, 276 Mo. 663, the injured was a thirteen-year-old boy and not an employee. In Ahnefeld v. Wabash Railroad, 212 Mo. 280, the deceased was run down and killed on a straight track where the railroad had no right to expect a clear track and where to look would have been to have seen the deceased walking down the track with back toward the approaching train. In Murphy v. Wabash, 228 Mo. 56, the deceased was an employee, but was off duty. He became intoxicated and laid down on the track and went to sleep and was killed. User of the track had fixed the duty to be on the lookout. In Eppstein v. Mo. Pac. Ry. Co., 197 Mo. 720, the deceased was standing on the track used by the public looking at a train on a track about ten feet away which was making a considerable noise. He was apparently oblivious to his peril. He was not an employee. In Tibbels v. Great Western Railroad Co., 219 S. W. 109, the facts were somewhat similar to those in this case. Deceased was crossing the track between cars through an opening left at a point much used as a crossing by deceased and the general public. Cars moved by a flying switch suddenly and unexpectedly bumped into a standing string of cars, causing them to move quickly upon the deceased. It was held it was the duty of the railroad company to be on the lookout for people passing over the tracks on this path because of the public use thereof. That case can be distinguished from this by the facts that the move-

ment of the switching crew was not in plain view as here, and the cars so bumped into the string of other cars were running wild and without knowledge of deceased's position on the part of the crew. Nor did deceased have any knowledge of the switching movement. In Beard v. Missouri Pacific, 197 S. W. 907, the person killed was a minor returning from work and walking down a spur track which was much used by the public. He was not an employee.

Our conclusion is that respondent has failed to show any negligence on the part of the switching crew. No one of the crew saw the deceased nearer than fifty feet of the track and the only employee who saw him at all had every reason to believe, because of his age and his long experience as an employee of the railroad company, that he would not attempt to cross between the cars when it was apparent that the switching crew was preparing to couple on to said cars. There is no evidence whatever that any of the crew saw the deceased in a position of peril, or even approaching dangerously near the zone of peril. Defendant could not be liable, therefore, under the humanitarian rule. [Butler v. U. Rys. Co., 238 S. W. 1077; State ex rel. v. Reynolds, 233 S. W. 219.]

It therefore becomes unnecessary to determine whether the action can be maintained under the provisions of the Federal Employers' Liability Act. Whether the action is brought under the Federal Employers' Liability Act or under Missouri law, negligence on the part of the defendant must be established by the evidence.

The judgment below is reversed. All concur.