FRANK M. VOORHEES, Administrator, and DORA VOORHEES, Administratrix, of Estate of OTTO VOORHEES, v. CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, Appellant.—30 S. W. (2d) 22.

Division Two, July 3, 1930.

836.

*Luther Burns, Henry S. Conrad, L. E. Durham* and *Hale Houts* for appellant.

*E. M. Harber* and *L. A. Warden* for respondents.

BLAIR, P. J.—This is an action under the Federal Employer's Liability Act for the death of Otto Voorhees. Trial by jury in the Circuit Court of Grundy County resulted in a verdict for plaintiffs in the sum of $8,000. Defendant was granted an appeal from the judgment entered on such verdict. This is a second appeal. On the first trial, plaintiffs secured a judgment for $6,000 and the

same was reversed and the cause remanded for another trial by the Kansas City Court of Appeals.  [7 S. W. (2d) 740.]

Plaintiff's deceased son was twenty-one years of age and was unmarried.  He lived with plaintiffs and contributed to their support.  They were appointed as personal representatives of his estate and prosecuted this action in that capacity.  Most of the facts are undisputed.

Defendant is engaged in interstate commerce.  Its railway track between the Iowa state line and Kansas City was used in such commerce.  The train which caused the fatal accident was an interstate passenger train moving westward between Trenton and Kansas City.  Deceased was employed by defendant as a member of a weed-cutting gang engaged in clearing the weeds from defendant's railway track and right of way.  He was killed between three and four o'clock in the afternoon of June 24, 1925, while lying apparently asleep between the rails of the track a few feet west of Turley private railway crossing about a mile from Wabash crossing.

The engineer of the train had received notice that the weed-cutting gang was at work in that vicinity and had been ordered to be on the lookout therefor.  As a further precaution, the foreman of the weed-cutting gang had posted deceased at Turley crossing to flag the westbound passenger train.  This train was a few moments late.  An eastbound freight train passed Turley crossing and met the passenger train at a switch a few miles east.  A brakeman on the freight train saw deceased step on the track and sit down on the rail after that train had passed.  Ed Trusty owned the farm crossed by the railroad at that point and used the private crossing in going from one part of his farm to the other.  The evidence discloses that the crossing was considerably used by Trusty, but does not show general public use thereof.  Trusty was plowing corn in an adjoining field and saw the weed-cutting gang at work.  Trusty crossed the railroad track over the private crossing to secure some cultivator repairs just after the freight train went east.  At that time he saw deceased lying across the track a few feet west of the crossing with his head on the north rail.  He had his cap pulled over his eyes.  He was holding his flag in his hand.  While Trusty was at his house he heard the whistle of the westbound passenger train.  It had passed the Turley crossing before he returned to his work.  The flag was lying on or beside the track, but deceased was not in sight.  Whether or not Trusty realized that the young man had been struck and killed or injured is not clear from the evidence.  If he did, he apparently did not get excited about it or stop his work to investigate.

The roadmaster's private car was attached to the rear of the train and the roadmaster himself was sitting on the observation platform looking back over the track when the train passed Turley

crossing. He saw the flag and some clothing and saw an object he could not identify apparently dropped from the train. At Wabash crossing he sent an employee back in a motor car to investigate. The death of deceased was thus ascertained.

For a distance of a quarter to a half of a mile east of Turley crossing the track was straight and continued so for some distance west of the crossing. The general direction was slightly north of west where the train was moving at the time. It was a bright clear day, with the sun reflecting from the rails. The testimony and experiments afterward conducted tended to show that an object on the track the size of deceased could be seen by one on a locomotive from the time it straightened out after leaving the curve until it was almost upon the object. Plaintiffs' evidence tended to show that such object could have been recognized by the engineer or fireman as being a human being in time to have stopped the train, under the conditions prevailing with the appliances at hand and without injury to the train or its passengers, before reaching and striking such object after it was discovered to be a human being. The evidence offered by defendant tended to prove the contrary. The engineer of defendant's train admitted seeing an object on the track, but said he thought it was some inanimate object, such as a cushion, clothing or possibly some dead animal. He did not give his undivided attention to it but saw no movement and concluded that it was an inanimate object.

The theory upon which the trial court submitted the case to the jury, as outlined in Instruction 5, was that defendant was not liable unless the engineer not only saw an object at the point where deceased was lying, but had actual knowledge that such object was a human being in a perilous position in time to stop, etc., with this qualification:

"Yet the court says to the jury, that while Engineer Graham must have had actual knowledge, that the object he says he saw on or near Turley Crossing was a human being in perilous position, in time, with safety to train, passengers and property thereon, with means at command, in the exercising of ordinary care, to prevent the striking, running over and killing of young Voorhees.

"However, the court says to the jury, that actual knowledge, as mentioned and required in said instructions, may be imputed and found, from facts and circumstances, so as to hold one to have knowledge and information which he did, could and should have known as a fact, from the facts and circumstances of which he had knowledge."

The trial court refused to give three instructions asked by defendant which were in effect demurrers to the evidence. Instruction 3-D well illustrates defendant's theory and reads as follows:

"The court instructs the jury that there is no evidence in this case that the defendant's engineer of train No. 33 discovered the presence of the deceased upon the track with knowledge that the object so seen was a human being before the engine of said train struck the deceased and in time to have stopped said train with safety to the train and its passengers before striking the deceased."

There seems to be no difference between the parties concerning the proposition of law that defendant is not liable for damages for deceased's death unless its employees operating the train not only actually saw the object on the track which turned out to be deceased, but that they must also have identified such object as a human being in a position of peril in time to have stopped the train with safety to the train and its passengers before striking deceased. On the former appeal the Kansas City Court of Appeals (7 S. W. (2d) l. c. 745) held that the trial court erred in refusing an instruction presenting that theory.

At the first trial Engineer Graham was called as a witness by the plaintiff and then testified, as he did in substance at the last trial, "that he saw an object on the track when his engine was about one-half mile away from it, but there was nothing about the object to suggest to him that it was a human being; that he did not know at that time that it was a man, and for that reason did not slacken the speed of his train." In discussing the effect of this testimony and its binding character upon plaintiffs, the Kansas City Court of Appeals said:

"This evidence, standing alone, would not have been sufficient to warrant the submission of the case to the jury, because it was not the engineer's duty to discover that the object on the track was a person, or to take any steps to avoid striking such object until he actually discovered it was a human being in a position of peril. We do not think, however, that plaintiff is concluded by the testimony of the engineer, if there is other substantial evidence in the record sufficient to warrant a reasonable inference that the engineer did discover that the object he saw on the track was a human being in time, by the exercise of ordinary care, to have avoided running his train over deceased. . . .

"There is other evidence in the record that the engineer identified the object he saw upon the track as a human being at the time he first saw it. One witness testified that he could see a pig seven inches high for half a mile along the track at the place in question. As heretofore stated, plaintiffs had a man lie between the rails of the track at the place where deceased was killed, and had a witness take a position on the track where the engine was when the engineer first saw the object on the track. This witness testified that he could and did easily discern that the object lying between the rails was a man. An experienced engineer testified that an

engineer sitting in the cab of the engine would have a better view, and could see farther ahead than a person standing on the track.

"If the witness who conducted the experiment under the circumstances shown in evidence could and did easily discern that the object lying on the track was a human being, it would not be unreasonable for a jury to infer that the engineer, who was in a better position to see, could and did do the same thing. While the engineer was under no duty to discover what the object was, yet, when he admits that he was looking and saw the object, other evidence that one in his position could see what the object was makes it a question for the jury to say whether or not he knew that the object was a human being. The evidence shows that, after the engineer saw deceased lying upon the track, he had ample time in which to stop his train and avoid striking him. The demurrer to the evidence was properly overruled."

At the last trial the engineer was not called by plaintiff and defendant used him as a witness. Plaintiff called the fireman Williams at the last trial. He said that he looked down the track when they passed the curve and he saw nothing, and then busied himself wetting down the coal and attending to his fire until Turley crossing was passed. He saw the engineer in his seat looking straight ahead when he started to wet the coal, but did not thereafter observe the engineer or what he was doing until after Turley crossing was passed. As a witness called by plaintiff at the first trial and as a witness called by defendant at the last trial, Engineer Graham testified positively and unequivocally that, while he noticed an object on the track near Turley crossing, he looked at it to see if it moved and when he found it did not move, he concluded it was some inanimate object which would not interfere with the passing of his train and did not afterwards give it his undivided attention, as he had other duties to perform in running his engine.

Upon the issue of the sufficiency of the evidence, the sole question is: Could the jury, from the proof in the record tending to show that one in the position of defendant's engineer could and should have discovered that the object on the track was a human being, properly find that the engineer of defendant's train actually knew that said object was a human being in a perilous position in time to have stopped the train under the conditions existing at the time with the appliances at hand and without injury to his train or its passengers and thereby have avoided striking and killing the deceased? The following cases selected from those cited by defendant fully supported its contention that defendant is not liable unless the engineer had actual knowledge, and not mere means of knowledge, that the object was a human being. [Sears v. Texas & N. O. Ry. Co. (Tex.), 266 S. W. 400, l. c. 403; Newport News etc. Co. v. Howe, 52 Fed. 362, l. c. 368; New York etc. Railroad

Co. v. Kelly, 93 Fed. 745; Louisville & N. Railroad Co. v. Ison's Admr. (Ky.), 288 S. W. 668; Louisville etc. Ry. Co. v. Williams (Miss.), 12 So. 957; Tucker's Admr. v. Norfolk & W. Railroad Co. (Va.), 24 S. E. 229; Rashall v. Railroad, 249 Mo. 509, l. c. 522, 155 S. W. 426; Armstrong v. D. & R. G. Railroad Co. (Mo. App.), 203 S. W. 246; Goodman's Admr. v. L. & N. Railroad Co., 116 Ky. 900.]

The Kansas City Court of Appeals so declared the law when it ruled that the refusal of Instruction 17d was error. Said instruction would have charged the jury "that the employees of defendant in charge of and operating the train owed deceased no duty, unless they actually discovered him and identified him as a human being upon defendant's track and in a place of danger, and that, if they did so discover him, the only duty they owed him in. such case was to exercise ordinary care, with the means at their command and with safety to the train and its passengers, to prevent deceased from being struck and injured by said train."

However, we are unable to agree with our brethren of the Court of Appeals when they ruled that the jury could properly infer that the engineer did recognize the object on the track as a human being, because other persons occupying a less favorable position for observation, upon subsequent experiment and at a point where the train could have been stopped, could and did see that a similar object was a human being. Such ruling necessarily presupposes a duty upon the part of the engineer to discover that the object on the track was a human being. Under the circumstances and at the particular place in question, the engineer was under the duty only to act upon what he actually discovered and not upon what he might have discovered.

A different rule prevails at places upon a railroad track where persons are likely to be, such, for example, as public crossings, tracks laid along public streets, and tracks where the public has acquired a user of the track and right of way. The Turley crossing was a private farm crossing and there was no showing of user of the track by the general public along the enclosed right of way at the point where deceased was killed. True, the engineer was ordered to keep a lookout for the weed-cutting gang. Such warning would cause him to keep a lookout for the motor car and this would include a man standing by the track left behind to flag the train. He was neither notified nor expected to keep a lookout for a flagman so neglectful of his duty and so reckless of his own safety that he would lie down on the track, to say nothing of going to sleep thereon. Nor do we think that the rules of defendant put in evidence by plaintiffs changed the situation. Deceased was a section hand whose duty it was to look out for his personal safety and particularly to protect himself against expected train movements.

[Degonia v. Railroad Co., 224 Mo. 564, l. c. 592, 123 S. W. 807; Evans v. Wabash Railroad Co., 178 Mo. 508, l. c. 517, 77 S. W. 515; Cahill v. Railroad Co., 205 Mo. 393, l. c. 408, 103 S. W. 532; Hammontree v. Payne, 296 Mo. 487, l. c. 495, 246 S. W. 915.] We must conclude, therefore, that the engineer owed plaintiffs' decedent no duty to discover him in his perilous position. It is not contended that the fireman, who was the only other occupant of the locomotive, even saw an object on the track.

Unless there is some substantial evidence in the record of facts, which in themselves tend to show that defendant's engineer actually discovered that the object he saw on the track was a human being, other than inferences concerning what he might have seen, we must hold that there was no evidence justifying submission of the case to the jury.

There is nothing in Engineer Graham's own testimony which aids plaintiff's case. While he admitted seeing some object on the track, he testified positively that he thought it was some inanimate object which would not interfere with the passage of the train. He glanced at it once or twice and saw no movement of any kind. His attention was required elsewhere part of the time. That he told the truth about his ignorance of the true character of the object is evidenced by the fact that he did not blow the engine whistle, ring the bell or slacken the speed of the train in the least, either before reaching or after passing the crossing. His conduct was entirely consistent with want of knowledge on his part of the character of the object, unless utter wantonness and criminal negligence be imputed to him without any evidence.

We are, therefore, relegated to a consideration of conduct on Graham's part, if any, which has some tendency to contradict his positive denial and tends to show that he actually did discover the identity of the object on the track. The fireman testified that he remained in his seat looking forward until the engine straightened out after leaving the curve and entering the straight track and that he saw nothing. He then left his post of observation to wet down the coal and attend to his fire. As he got down from his seat, he saw the engineer looking straight ahead. He did not look at the engineer again until after the Turley crossing had been passed. He therefore neither saw the engineer do anything nor heard him say anything from which the jury could properly have drawn the inference that he had discovered at any time that the object on the track was a human being.

The character of proof necessary to such a finding is well exemplified by the case of Soles v. Atlantic Coast Line Railroad Co. (N. C.), 114 S. E. 305, cited by plaintiffs. There the flagman was asleep, sitting on the rail with his head in his hands and elbows on his knees. He thus presented a much larger and higher

object to the view of the engineer than did the deceased in the case at bar. That the engineer there actually saw deceased in time to have stopped, which was the question in the case, was shown by the fact that several blasts of the whistle were blown after torpedoes set out by the deceased five hundred to six hundred feet away had been exploded. It was upgrade. The engineer saw the man, but waited too long to apply his brakes, probably not thinking that the man was asleep and expecting that he would move from his perilous position.

So in Seaboard & Railroad Co. v. Joyner's Admr. (Va.), 23 S. E. 773, relied upon by plaintiff an old negro was seen by the engineer running toward the approaching train and frantically waving his hat. The engineer was thereby warned that something was wrong ahead and that he should stop for some reason, although he testified that he did not see the deceased until too late to stop. It also appears that a rule required him to stop upon receiving such a signal.

Nor do other cases relied upon by plaintiffs support their contention when properly analyzed. In Rittenhouse v. St. Louis-San Francisco Ry. Co., 229 Mo. 199, 252 S. W. 945, it was said:

"The plaintiff maintains that the members of the switch crew negligently shoved the cars against the deceased when they knew, or by the exercise of ordinary care could have known, that he was at that time engaged in inspecting and going over the train, and was between two of said cars. The record contains neither positive, nor inferential evidence, that defendant actually knew that deceased had taken the position between the cars. *Actual knowledge, however, may be imputed and charged, from surrounding facts and circumstances, so as to hold one to have known as a fact that which he could have discovered or learned by the exercise of ordinary care.* [Vandeventer v. Railroad (Mo. Sup.), 177 S. W. 834.]" (Italics ours.)

The words we have italicized were not necessary to the decision in the case, because the deceased there was an employee whose duty it was to look out for his own safety. To him the railroad company owed no duty to be on the lookout. The train crew had no actual knowledge of the presence of the deceased between or even about the cars. Knowledge of a fact, because of knowledge of circumstances which should impart such knowledge, can only be inferred where there is a duty to know such fact. The Vandeventer case, cited in the foregoing excerpt, was a case where the deceased was killed while crossing a railroad track. It was his duty to look out for approaching trains and he therefore was charged with the knowledge of the approach of the train. He could have seen it had he looked. The Rittenhouse case is not an authority for plaintiffs.

Lee v. Bowman, 55 Mo. 400, cannot be regarded as in point. It deals with ejectment for the possession of real estate and the facts which should put the defendant on notice in determining the propriety of his claim for subsequent improvements.

Plaintiffs offer the following citation: "Tucker, Admr., v. Railway (Ky.), 288 S. W. 688." At the book and page cited we find Louisville & N. Railroad Co. v. Ison's Admr., cited by defendant. It is a Kentucky case where the engineer saw an object on the track and did not identify it as a human being until he had run over and killed the deceased. Judgment for the plaintiff was reversed. The court said: "The rule is firmly established in this jurisdiction that, where trainmen discover an object upon or dangerously near the track and cannot tell what it is, and there is nothing in the surroundings to impose the duty upon them to know what it is, the defendant does not have to check the speed of the train, and proceed upon the assumption that the object may be a human being."

If plaintiffs really intended to cite Tucker's Admr. v. Railroad (also cited by defendant), that is a Virginia case reported in 24 S. E. at page 229. There deceased was a trespasser and was either asleep, drunk or stricken with epilepsy. He was lying on the outside of the rails with his head between the crossties. Engineer, fireman and supervisor, on the locomotive at the time, all saw an object beside the track, but none of them discovered, or even suspected, that such object was a human being, until the train was within such a short distance that it could not be stopped before striking deceased. On these facts, the court said: "The fact that the engineer saw what he supposed to be an inanimate object lying in the ditch at the side of the track was not sufficient to impose upon him the duty of taking steps to stop his train. No such degree of caution is required, under the rule to which we have adverted. Railroad companies would fall far short of meeting the demands of the public, if they had to stop whenever they saw an object lying on the side of the roadbed, for fear it might be a trespasser in danger. When they have sufficient notice, or sufficient ground to believe, that a trespasser is in danger, they owe the duty of protection, so far as possible consistent with their higher duty to passengers. But, when no one is known or believed to be in danger, they are under no obligation to prepare for what is not anticipated, or to stop and examine where no harm is suggested by the circumstances."

In Sowards v. Chesapeake & O. Ry. Co. (Ky.), 272 S. W. 32, cited by plaintiffs, it was held that a case was made for the jury. The engineer said that he did not identify the object as a human being until the front of the engine had struck the object; but the engineer said that he observed the fireman as they approached the

object and he acted as though he had seen something on the track. It was, therefore, held to be a question for the jury, whether the fireman from his actions actually discovered the object was a man in time to have had the train stopped, and this notwithstanding his testimony that he did not recognize the object as a man. There the circumstances tend to prove actual knowledge of the deceased's peril on the part of the fireman.

In Pennsylvania Co. v. Cole, 214 Fed. 948, a following train ran into a caboose and the rear brakeman sleeping in the caboose was killed. It was his duty to go back and protect his train when it stopped. Failure to put proper lights on the caboose was held to have been negligence. The facts are not sufficiently similar to make the case of value here.

Auvil v. Western Maryland Ry. Co., 19 Fed. (2d) 30, is not in point. The action was for death of a pedestrian at a public railroad crossing. It was the duty of deceased to observe approaching trains. Recovery was sought under the humanitarian rule. The court held that there was nothing in deceased's conduct to indicate to the engineer that she was oblivious of the train's approach.

State ex rel. St. Louis-San Francisco Ry. Co. v. Cox (Mo.), 293 S. W. 122, does not aid plaintiffs' case. There the engineer saw an object on the track and recognized it as a human being and testified that he endeavored to stop the train and failed to stop it before reaching and striking deceased. There was evidence tending to prove that the train could have been stopped between the point where the engineer said he discovered the deceased and the point where the deceased lay. On this state of the record, we held that the opinion of the Springfield Court of Appeals, ruling that the case was properly submitted to the jury under the humanitarian rule, did not contravene decisions of this court relied upon by relator.

In Privitt v. Railway Co. (Mo. Sup.), 300 S. W. 726, the plaintiff was injured on a track where defendant was required to be on the lookout for persons upon and beside the track, because of established user of the track by the public. Such circumstances distinguish that case from the one at bar.

Iu Burton, Admr., v. C. & A. Ry. Co., 176 Mo. App. 14, 162 S. W. 1064, the deceased was killed at a public crossing where defendant was required to be on the lookout for the public using such crossing. There was evidence tending to show that the operatives of the train could have seen that the plaintiffs' decedent and his companions were intoxicated and oblivious to the train's approach.

Payne v. C. & A. Railroad Co., 136 Mo. 562, 1. c. 575, 38 S. W. 308, does not aid plaintiff. It was a public crossing case where

deceased was required to be on the lookout, and the railway company was held not liable.

Eppstein v. Missouri Pacific Railway Co., 197 Mo. 720, 94 S. W. 967, was a case where deceased was run down and killed on a straight track where the railroad track was used so extensively by the public that the defendant was required to be on the lookout for persons walking thereon. The case is of no value to plaintiffs' case.

Plaintiffs cited Lynch v. C. & A. Railroad Co., 208 Mo. 1, 106 S. W. 68, apparently in support of their contention that defendant admitted its own negligence by pleading contributory negligence on the part of deceased. This contention is without foundation in defendant's answer. The only reference therein to deceased's negligence was in defendant's allegation "that if Otto Voorhees, mentioned in plaintiffs' petition, was injured and killed at the time and place mentioned in plaintiffs' said petition, his injuries were caused by his own negligence in failing to look out for the approach of trains, and in being and remaining in a place where he might be struck by oncoming trains." Defendant thereby charged that deceased's death was caused solely by his own negligence. The answer contains no plea of contributory negligence.

Plaintiffs cite Section 1710 of Volume II of Thompson's Commentaries on the Law of Negligence (4 Ed.), where it is said: "It has been held that it is not essential to the liability of a railroad company for injuries to a trespasser upon the track, that the employees should actually know of the danger to which he is exposed in time to avoid the accident, but it is enough if they have sufficient notice or belief to put a prudent man on the alert." The note appended to this text cites only Tucker v. Norfolk etc. Railroad Co., 92 Va. 549, 24 S. E. 229, which was the case above referred to where the engineer, fireman and supervisor riding on the engine testified to facts tending to prove that the object seen at the side of the track was some inanimate object until the train was too close to avoid striking it. That part of the opinion which stated the rule to be that it is enough if the employees have sufficient notice or belief to put a prudent man on the alert was not applicable to; the facts in that case, but did apply to Seaboard Railway Co. v. Joyner's Admr., cited as authority. This is the case where the old negro was waving his hat and trying to flag the train and the engineer saw him.

But the general rule is stated in the same work by Mr. Thompson at Section 1709, as follows:

"The mere failure of the trainmen, by the use of reasonable care, to discover the trespasser in time to avoid injuring him will not render the railroad company liable. Succinctly stated, this doctrine is that a railway company is not liable for injury to a trespasser upon its track or grounds, if no duty or care in his

favor is omitted, after becoming aware of his danger, or unless its servant could have avoided injuring him by the exercise of reasonable care, after discovering his exposed position. It follows that it will not be enough to charge the railway company with liability under this rule that the trespasser *might have been* seen by the engineer in time to have avoided injuring him, but it must be made to appear that he *was* seen." (Emphasis by the text-writer.)

Deceased in the case at bar, in the use he was making of defendant's track, certainly had no rights superior to those of a mere trespasser. As he was a flagman, defendant was under no duty to look out for his safety.

We are satisfied that plaintiffs made no case for the jury and that defendant's demurrer to the evidence at the close of all the testimony should have been given. There have been two trials of the case whereat the evidence was practically the same. There is no reason to believe that plaintiffs could produce additional evidence which would entitle them to have their case submitted to the jury. Hence, the judgment should be reversed outright. It is so ordered. All concur.