Leonard SUMMERS et al.,
Plaintiffs-Appellants,

v.

UNION ELECTRIC COMPANY,
Defendant-Respondent.

No. 37984.

Missouri Court of Appeals,
St. Louis District,
Division Two.

March 21, 1978.

Motion for Rehearing and/or Transfer
Denied May 9, 1978.

Application to Transfer Denied
June 15, 1978.

Richeson, Roberts, Wegmann, Gasaway, Stewart & Schneider, Jack C. Stewart, Hillsboro, for plaintiffs-appellants.

Thurman, Nixon, Smith, Howald, Weber & Bowles, James E. Bowles, Hillsboro, for defendant-respondent.

REINHARD, Judge.

Plaintiffs brought this action for damages for destruction of plaintiffs' property by fire, due to the allegedly negligent conduct on the part of defendant in "energizing" plaintiffs' property. A jury found in favor of defendant and plaintiffs appeal.

On February 26, 1973, pursuant to a request by one Donald Harris, defendant dispatched one of its employees to energize a building owned by plaintiffs, Leonard and Evelyn Summers. Donald Harris had called to request that Union Electric provide electrical service to a building that he intended to rent, and from the conversation between Mr. Harris and defendant's agent, defendant understood that the property to be connected was that owned by plaintiffs, located on the east side of Highway CC, 1.2 of a mile west of Highway 110.[1] As a result of this request, defendant dispatched Frank Steinman to "reconnect" or "turn on" the meter, thereby energizing the garage and attached apartment which comprised one of the two buildings on the Summers' property. At the time of the reconnection of the meter on the garage-apartment complex and the subsequent fire, the Summers were in the process of moving into a brick home also on the property. The Summers were not present at the time the meter was connected by Steinman, had neither requested nor authorized the connection and did not know Donald Harris nor authorize him to request a service connection.

Steinman testified that upon connecting Union Electric's electrical wires to the meter on the garage-apartment building, he heard a motor running inside the garage and went to the main house on the property to inform someone about the noise. Steinman met Vernon Roth,[2] who was helping install a water heater in the house on Summers' property, and told Roth about the noise in the garage. The two men then went into the garage. Roth testified that he turned off a blower on an oil furnace in the garage. Roth also testified that he saw several bare wires hanging from switch boxes and light receptacles in the garage building at this time but that he was unsure whether Steinman had seen the wires. In his testimony, Steinman stated that he, Steinman, pulled the main fuse on the fuse box, cutting off the electricity in the garage, a fact Roth disputes. Steinman also stated that he never saw any exposed wiring in the garage at this time.

A day or two after the meter was reconnected, Mr. Summers noticed a light on in the apartment and switched off the light.

---

1. According to defendant's records, the property about which Mr. Harris had actually been speaking was located on the west side of Highway CC, .7 of a mile north of Highway 67.

2. There is no claim that Roth was an agent of Plaintiffs.

Summers testified that the next day he called Union Electric to inform the Company that he had electricity in his building, which he was not supposed to have. He further testified that the Union Electric employee told him that he had no electricity in that building, but that Union Electric would send someone to "check about it". The employee to whom Mr. Summers allegedly spoke denied receiving any such call from Leonard Summers. Summers knew that there were several bare wires hanging exposed in the garage during the week immediately preceding the fire, and between the time he discovered that there was electricity in the garage building and the time of the fire, he neither took out any fuses nor turned off the switch box to the garage. He admitted he knew that if the fuses were removed there would have been no electricity in the garage.

On March 3, 1973, the evening before the fire the Summers placed their 1972 Ford pick-up truck in the garage, which then contained various items of property, including a deep freeze, a washing machine and a dryer, an air conditioner, a fully equipped tractor and some tools. A fire occurred the next day, on Sunday, March 4, destroying the garage and apartment and the property contained therein. Plaintiffs offered expert testimony to the effect that the fire was of a high level burning of "electrical origin in the ceiling part of the garage-apartment complex".

Plaintiffs claim that the court erred in submitting Instruction No. 8, defendant's contributory negligence instruction; in failing to submit an instruction defining "negligence"; and in admitting in evidence a bank appraisal of plaintiffs' property.

■ We first must consider defendant's argument that plaintiffs failed to make a submissible case because alleged errors in the trial proceedings become immaterial if plaintiffs failed to make a submissible case. *Wilkerson v. State Farm Mutual Automobile Ins. Co.*, 510 S.W.2d 50 (Mo.App.1974).

■ Plaintiffs alleged in their petition and submitted to the jury several theories of recovery based on negligence. One theory being that defendant was negligent in energizing their property under conditions known to it or discoverable upon reasonable inspection. The law in respect to liability of a power supplier for damages resulting from defects in wires owned and controlled by the customer was clearly stated in *Kuhlman v. Water, Light & Transit Co.*, 307 Mo. 607, 271 S.W. 788, 796 (1925):

". . . [T]he weight of authority seems to support the view that, if the appliances [lines] of the customer are not constructed or owned by the company generating the electricity, the company is not bound to inspect the same, and is not liable for an injury that is received by reason of defects in such appliances [lines], where *it has no knowledge of the defects*, though the electricity which causes the injury comes from its generating plant". (Emphasis added).

Union Electric had no duty to inspect beyond its own lines. Liability could only be predicated upon defendant's actual knowledge of the condition of the wiring in the garage-apartment complex. Roth testified that he and Steinman entered the garage in daytime and that several bare wires hung in various parts of the garage. Roth was unable to say, however, whether Steinman had seen or even looked in the direction of the exposed wires. Roth's testimony that he, Roth, saw the wires is plaintiffs' only evidence of defendant's knowledge of the hanging wires. The record is devoid of any direct evidence that Steinman had actual knowledge of the defective condition of the wiring. In the absence of a duty on defendant's part to inspect plaintiffs' wires, we hold the jury could not be permitted to infer actual knowledge from the circumstances detailed in Roth's testimony. *Voorhees v. Chicago, R. I. & P. Ry. Co.*, 325 Mo. 835, 30 S.W.2d 22 (1930), 29 Am.Jur.2d, Evidence, § 221, p. 271.

Because there was no evidence that Steinman had actual knowledge of the defective wiring, plaintiffs' argument that defendant was negligent because Steinman "failed to immediately de-energize said electrical wiring", must also fail.

■ Finally, plaintiffs submitted on their theory that the defendant was negligent in failing to warn of its intention to energize plaintiffs' property or in failing to warn that the property had been energized. The purpose of a "warning" is to apprise a party of the existence of danger of which he is not aware to enable him to protect himself against it, and where the party is aware of the danger, the warning will serve no useful purpose. Plaintiffs had knowledge that the property was energized five (5) days before the fire and thus, defendant's failure to warn could not have been the proximate cause of plaintiffs' loss.

■ We conclude that plaintiffs failed to make a submissible case under any of the theories presented by them. However, we are compelled to disagree with defendant's contention that there was no evidence of negligence by it "in taking the order from Donald Ray Harris, in issuing the order to Frank Steinman, or in Frank Steinman's execution of that order". Those generating, transmitting or distributing electricity are obliged by law to exercise the highest degree of care, *Foote v. Scott-New Madrid-Mississippi Electric Coop.*, 359 S.W.2d 40, 43 (Mo.App.1962), and liability may be found on the basis of acts or omissions which result in reasonably foreseeable harm to person or property. *Tellis v. Union Elec. Co.*, 536 S.W.2d 742 (Mo.App.1976). We believe the duty to use the highest degree of care includes a duty to energize property only with the consent and authority of the owner. As applied to this case, Union Electric had a duty not to energize plaintiffs' property without proper authorization. This duty and the breach thereof was neither pleaded nor submitted as a theory of recovery.

Since plaintiffs failed to make a submissible case on any of their theories, it becomes unnecessary for us to review their allegations of trial errors or defendant's claim that plaintiffs were contributorily negligent as a matter of law.

Judgment affirmed.

STEWART, P. J., and SMITH, J., concur.